# EXHIBIT M

**CAROLYN A. QUATTROCKI**
*Chief Deputy Attorney General*

**LEONARD J. HOWIE III**
*Deputy Attorney General*

**CARRIE J. WILLIAMS**
*Deputy Attorney General*

**SHARON S. MERRIWEATHER**
*Deputy Attorney General*

**ZENITA WICKHAM HURLEY**
*Deputy Attorney General*

**JONATHAN SMITH**
*Division Chief*

**ROBERT A. SCOTT**
*Division Chief*

**ADAM KIRSCHNER**
*Unit Chief*

**PETER V. BERNS**
*General Counsel*

**CHRISTIAN E. BARRERA**
*Chief Operating Officer*



**STATE OF MARYLAND**
**OFFICE OF THE ATTORNEY GENERAL**

**ANTHONY G. BROWN**
*Attorney General*

**January 30, 2026**

U.S. Immigration and Customs Enforcement
Office of the Principal Legal Advisor
500 12th St. SW, Mail Stop 5900
Washington, DC 20536–5900
OPLAServiceIntake@ice.dhs.gov

Office of the General Counsel
U.S. Department of Homeland Security
245 Murray Lane, SW, Mail Stop 0485
Washington, DC 20528–0485
ogc@hq.dhs.gov

**Re: Investigation of U.S. Immigration and Customs Enforcement "Hold Rooms" in the George H. Fallon Federal Building, 31 Hopkins Plaza, Baltimore, MD 21201**

To Whom it May Concern:

This letter is submitted pursuant to 6 C.F.R. §§ 5.41–5.49 and *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). We request that you provide a formal response within **14 days**. We are happy to confer at a later date on next steps in the investigation described in this letter, including (1) potential witness interviews; and (2) a tour of the George H. Fallon Federal Building. In addition to the requested information contained in the attached subpoena, we request that you take measures to preserve all related material and that no such material is destroyed in the meantime.

The Maryland Office of the Attorney General (OAG) accordingly issues a subpoena, attached here, to the U.S. Department of Homeland Security (DHS) and U.S. Immigration and Customs Enforcement (ICE) for documents regarding "hold rooms," and other similar temporary detention facilities, used to detain individuals in ICE custody in the George H. Fallon Federal Building ("Fallon Federal Building") at 31 Hopkins Plaza, Baltimore, Maryland 21201.[1] For purposes of this letter, and as further defined in the attached subpoena, "hold rooms" include any room in the Fallon Federal Building that has been used to detain individuals in ICE custody within the last twelve (12) months, whether permanently, or temporarily, or short term.[2] This letter and attached subpoena describe "the nature and relevance of the official information sought." 6 C.F.R. § 5.45(a).

This request for documents is issued in connection with an OAG investigation conducted pursuant to sections 20-1041(a) and 6-106.1(b)(1) of the State Government Article of the Annotated Code of Maryland. In light of allegations raised in public reporting and a putative class action lawsuit in which the State of Maryland is amicus curiae,[3] the OAG's Civil Rights Division and Federal Accountability Unit are conducting an investigation of potential civil rights violations and other violations of federal law, e.g., the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*, in connection with immigration detention by ICE in the Fallon Federal Building.

In particular, OAG is aware of a video circulating online that shows numerous male individuals detained in what appears to be a "hold room" or a similar temporary detention facility in the Fallon Federal Building.[4] Individuals in the video say that they have been detained for 10

---

[1] The Baltimore Field Office for ICE Enforcement and Removal Operations (ERO) is located at the Fallon Federal Building. There, ICE operates a Holding Facility, which is "a facility that contains hold rooms that are primarily used for the short-term confinement of individuals who have recently been detained, or are being transferred to or from a court, detention facility, other holding facility, or other agency." *See* U.S. Immigr. & Customs Enf't, Off. of Enf't & Removal Operations, *Directive 11087.2: Operations of ERO Holding Facilities* § 3.2 (2024), https://www.ice.gov/doclib/foia/policy/directive11087.2.pdf [hereinafter the "ICE Hold Policy" or the "Policy"]. "Short-term" is defined as "a period not to exceed 12 hours, absent exceptional circumstances." *Id.* at 2 n.3.

[2] ICE defines a "hold room" to mean a "holding cell, cell block, or other secure enclosure within a holding facility." *See id.* § 3.3. As explained above, however, the term "hold room," as used this letter and attached subpoena, also includes temporary detention facilities beyond those formally designated as "hold rooms."

[3] *See* Brief for State of Maryland as Amicus Curiae, *D.N.N. et al. v. Baker et al.*, No. 1:25-cv-01613-JRR, ECF 38 (D. Md. June 18, 2025).

[4] *See* John-John Williams IV *et al.*, *Viral video provides rare look inside crowded ICE holding room in Baltimore*, Balt. Banner (Jan. 27, 2026, 5:30 AM),

days, assaulted, and denied food and proper hygiene. These allegations are consistent with the claims raised in a putative class action lawsuit challenging conditions in the hold rooms, including overcrowding, extended duration of detention, and other mistreatment.[5] Indeed, in that pending lawsuit, Plaintiffs submitted evidence that the civil rights and civil liberties of Maryland residents are being routinely violated and that the conditions in the hold rooms are creating health and safety threats to the State. Declarations describe noncitizens being held in overcrowded conditions, without adequate access to sanitation or bedding.[6] Detainees are seemingly crowded together without having been meaningfully screened for infectious disease, medical needs, or disability accommodations and have limited access to health care.[7] As many as 40 to 50 people were reportedly kept in a room of only 15 feet by 15 feet, and many were apparently held overnight

---

https://www.thebanner.com/politics-power/national-politics/viral-video-baltimore-ice-holding-room-immigrants-DWH3RIXO45CDRGZDZA4QPA3JNQ/.

[5] *See generally* Second Amended Complaint and Petition for Writ of Habeas Corpus, *D.N.N.*, No. 1:25-cv-01613-JRR ECF 52 (D. Md. July 11, 2025) [hereinafter "*D.N.N.* Second Amended Complaint"] (describing poor conditions in hold rooms at the Fallon Federal Building); Memorandum in Support of Renewed Motion for Class Certification and Preliminary Injunction, *D.N.N.*, No. 1:25-cv-01613-JRR, ECF 127 (D. Md. Dec. 23, 2025) (same); *see also* First Amended & Supplementary Complaint, *Neguse et al. v. U.S. Immr. & Customs Enf't et al.*, No. 25-cv-2463-JMC, ECF 48-1, ¶¶ 80–88 (D.D.C. Jan. 26, 2026) (describing poor conditions at other ICE detention facilities).

[6] Declaration of Edward Doe, Exhibit 8 to Plaintiffs' Renewed Motion for Class Certification and Preliminary Injunction, *D.N.N.*, No. 1:25-cv-01613-JRR, ECF 127-10, ¶ 6 (D. Md. Dec. 23, 2025); Declaration of Geoffrey Afamefuna Akaolisa, Exhibit 9 to Plaintiffs' Renewed Motion for Class Certification and Preliminary Injunction, *D.N.N.*, No. 1:25-cv-01613-JRR, ECF 127-11, ¶¶ 5–6 (D. Md. Dec. 23, 2025); Declaration of Gustavo Adolfo Garcia-Vigil, Exhibit 10 to Plaintiffs' Renewed Motion for Class Certification and Preliminary Injunction, *D.N.N.*, No. 1:25-cv-01613-JRR, ECF 127-12, ¶ 6 (D. Md. Dec. 23, 2025); Declaration of Yamileth Arely Martir de Medina, Exhibit 11 to Plaintiffs' Renewed Motion for Class Certification and Preliminary Injunction, *D.N.N.*, No. 1:25-cv-01613-JRR, ECF 127-13, ¶ 7 (D. Md. Dec. 23, 2025); Declaration of Alexander Antonio Salazer Monge, Exhibit 12 to Plaintiffs' Renewed Motion for Class Certification and Preliminary Injunction, *D.N.N.*, No. 1:25-cv-01613-JRR, ECF 127-14, ¶¶ 7, 13 (D. Md. Dec. 23, 2025); Declaration of Angel Tlapanco Peralta, Exhibit 13 to Plaintiffs' Renewed Motion for Class Certification and Preliminary Injunction, *D.N.N.*, No. 1:25-cv-01613-JRR, ECF 127-15, ¶ 6 (D. Md. Dec. 23, 2025).

[7] Doe Decl., *D.N.N.*, No. 1:25-cv-01613-JRR, ECF 127-10, ¶¶ 6, 11–13; Akaolisa Decl., No. 1:25-cv-01613-JRR, ECF 127-11, ¶¶ 6–7; Garcia-Vigil Decl., *D.N.N.*, No. 1:25-cv-01613-JRR, ECF 127-12, ¶¶ 6–7, 9; Salazer Monge Decl., *D.N.N.*, No. 1:25-cv-01613-JRR, ECF 127-14, ¶¶ 14–15; *see also* Martir de Medina Decl., *D.N.N.*, No. 1:25-cv-01613-JRR, ECF 127-13, ¶ 7.

without bedding in conditions so crowded that people slept sitting up.[8]  Medical screens, such as they occurred, were reportedly performed by ICE officers with no medical training and detainees were denied necessary medications.[9]

The Attorney General is authorized to conduct investigations of potential civil rights violations and actions or inactions by the federal government that threaten the public interest and welfare of Maryland residents.  Md. Code Ann., State Gov't § 20-1041(a) ("The Attorney General may investigate, prosecute, and remediate, on behalf of the residents of the State, any conduct that constitutes a civil rights violation."); *id.* § 6-106.1(b)(1) ("[T]he Attorney General may investigate, commence, and prosecute or defend any civil or criminal suit or action that is based on the federal government's action or inaction that threatens the public interest and welfare of the residents of the State with respect to . . . (i) protecting the health of the residents of the State and ensuring the availability of affordable healthcare . . . (iii) protecting civil liberties . . . (viii) protecting the residents of the State against illegal and unconstitutional federal immigration and travel restrictions . . . (xiii) otherwise protecting, as parens patriae, the State's interest in the general health and well-being of its residents.").  In addition, the Attorney General is authorized to investigate and seek a remedy for any "act of discrimination prohibited under the U.S. Constitution, the Maryland Constitution, or State or federal law."  *Id*. § 20-1040(c)(1); *see id.* § 20-1041(a).

OAG submits this subpoena pursuant to State law authorizing the request for documents in connection with an investigation of civil rights violations, including whether persons are being denied basic constitutional rights based on their national origin, race, or ethnicity.  *Id*. § 20-1044(b) ("During any examination, investigation, or hearing, the Office of the Attorney General may (1) subpoena witnesses; (2) administer oaths; (3) examine individuals under oath; and (4) compel production of records, books, papers, contracts, and other documents"); *see also* 6 C.F.R. §§ 5-43(a) & 5.45(a) (describing materials and testimony covered by *Touhy* regulations).

We seek documents, detailed in the subpoena, related to conditions in the hold rooms in the Fallon Federal Building, specifically overcrowding, extended duration of detention, and other mistreatment (i.e., failure to provide medical attention, failure to provide sufficient food and water, failure to provide an adequate sleep environment, failure to provide access to hygienic and sanitary conditions, and failure to provide access to legal counsel), and information about individuals detained in the hold rooms in the Fallon Federal Building, specifically their demographics and the

---

[8]  Doe Decl., *D.N.N.*, No. 1:25-cv-01613-JRR, ECF 127-10, ¶ 6; Garcia-Vigil Decl., No. 1:25-cv-01613-JRR, ECF 127-11, ¶ 5; Akaolisa Decl., No. 1:25-cv-01613-JRR, ECF 127-11, ¶¶ 5–6; Salazer Monge Decl., *D.N.N.*, No. 1:25-cv-01613-JRR, ECF 127-14, ¶ 7.

[9]  Doe Decl., *D.N.N.*, No. 1:25-cv-01613-JRR, ECF 127-10, ¶¶ 11–13; Akaolisa Decl., No. 1:25-cv-01613-JRR, ECF 127-11, ¶¶ 7, 9; *see also* Garcia-Vigil Decl., *D.N.N.*, No. 1:25-cv-01613-JRR, ECF 127-12, ¶ 9; Martir de Medina Decl., *D.N.N.*, No. 1:25-cv-01613-JRR, ECF 127-13, ¶ 8; Salazer Monge Decl., *D.N.N.*, No. 1:25-cv-01613-JRR, ECF 127-14, ¶¶ 14–15; Tlapanco Peralta Decl., *D.N.N.*, No. 1:25-cv-01613-JRR, ECF 127-15, ¶¶ 8, 11.

legal basis for their arrest and detention. These categories of information are each relevant to OAG's investigation.

**First**, information about conditions in the hold rooms is relevant to the alleged injuries which threaten the public interest and welfare of Maryland residents and therefore form the basis of OAG's investigation. As described above, the apparent conditions in these hold rooms have purportedly harmed numerous noncitizen residents of Maryland.[10] In addition to these harms, conditions in the hold rooms have directly impacted the State of Maryland.[11] For example, in a February 9, 2025 memorandum requesting medical personnel, the Deputy Field Office Director explained that the Baltimore Field Office does not have on-site medical staff and must therefore transport individuals requiring medication or medical attention to the University of Maryland Hospital.[12] The Deputy Field Office Director described an "increasing number of arrest cases presenting medical concerns" and noted that "some noncitizens necessitate hospital visits twice daily," with each transport "requir[ing] the presence of two officers."[13] The lack of on-site medical staff places burdens on the State-supported medical system, as "there are ongoing challenges with the University of Maryland Hospital, which has indicated the possibility of refusing services for cases deemed non-urgent."[14] OAG's understanding is that ICE continues to rely on medical

---

[10] In the putative class action lawsuit, Plaintiffs have alleged that, in violation of ICE's own policies, Defendants (1) "have detained and continue to detain Plaintiffs and putative Class members in the Baltimore Hold Rooms for longer than 12 hours, without articulable exceptional circumstances"; (2) "have not and do not empty the holding facilities in the ICE's Baltimore ERO Field Office upon the conclusion of daily operations"; (3) "have denied Plaintiffs access to prescribed medications as necessary"; (4) "have failed and continue to fail to provide Plaintiffs with access to drinking water at all times"; (5) "have not and are not providing individuals detained in the Baltimore Hold Rooms an adequate meal at least every six hours"; and (6) "have not ensured that individuals who exhibit signs of acute mental health distress are referred to mental health professionals." *D.N.N.* Second Amended Complaint, *supra* note 5, ¶ 77. They further allege that Defendants have deprived Plaintiffs of (1) sleep, (2) hygienic and sanitary conditions, (3) adequate medical care, (4) adequate food and water, and (5) access to counsel. *Id.* ¶¶ 89–132.

[11] *See, e.g.*, Brief for State of Maryland as Amicus Curiae, *supra* note 3, at 14 ("By indefinitely detaining immigrants in overcrowded, unsanitary conditions without reliable access to appropriate sanitation and bathing facilities, adequate food and water, or life-sustaining medications such as those used to treat diabetes and HIV, ICE also has created an unacceptable risk to Maryland's public health.").

[12] Memorandum from Nikita Baker, Deputy Field Office Director, Baltimore Field Office, to ICE Unit Chief, Detention Oversight Unit, Oversight, Compliance and Acquisition Division (Feb. 9, 2025), *D.N.N.*, No. 1:25-cv-01613-JRR, ECF 127-3 at 2 (D. Md. Dec. 23, 2025) [hereinafter "February 9, 2025 ICE Memorandum"].

[13] *Id.*

[14] *Id.*

transport to University of Maryland affiliated hospitals.[15]  Thus, information about conditions in the hold rooms is relevant to evaluating the nature and scope of harm to Maryland residents and the State of Maryland.

**Second**, detainee demographics are relevant to OAG's investigation of potential civil rights violations.  All individuals in detention are guaranteed constitutional protection, including requirements that the government provide for their safety and well-being.  The conditions described in Plaintiffs' declarations in *D.N.N.* and shown in the video purportedly filmed inside a hold room in the Fallon Federal Building fall far short of minimal treatment acceptable under the U.S. Constitution and standards that Maryland has established for its own detention facilities.  Subjecting individuals to unequal treatment and/or treatment in violation of constitutional protections and other standard detention practices on the basis of protected characteristics, including national origin, raises civil rights concerns.  Preliminary evidence suggests that there may be ongoing civil violations related to immigration detention by ICE at the Fallon Federal Building.  For example, according to a daily detention log, twenty of the twenty-one individuals listed as detained in in the Fallon Federal Building on May 8, 2025 are listed as Spanish-speaking nationals of Colombia, El Salvador, Guatemala, Honduras, and Mexico,[16] and declarants in *D.N.N.* have described a concerning lack of interpretive services.[17]  Further, some of the individuals shown

---

[15] *See* Declaration of Jose Guerrero, Assistant Field Director, Baltimore Field Office, *D.N.N.*, No. 1:25-cv-01613-JRR, ECF No. 40-1 ¶ 30 (D. Md. June 30, 2025) ("If aliens require medication during their time in the Holding Facility, they are taken to the University of Maryland Medical Center, approximately three blocks from the Holding Facility, or Mercy Hospital, approximately four blocks from the facility."); Respondents-Defendants' Supplementary Response to Petitioners-Plaintiffs' Interrogatories (Sept. 16, 2025), Exhibit 7 to Plaintiffs' Renewed Motion for Class Certification and Preliminary Injunction, *D.N.N.*, No. 1:25-cv-01613-JRR, ECF 127-9 at 4 (D. Md. Dec. 23, 2025) ("Defendants confirm the Baltimore Holding Rooms do not have anyone onsite who is licensed to provide any medical or mental health care services.").

[16] *See* Exhibit C to Plaintiffs' Opposition to Defendants' Motion for Temporary Stay of Discovery, *D.N.N.*, No. 1:25-cv-01613-JRR, ECF No. 107-3 (D. Md. Oct. 5, 2025); Plaintiffs Opposition to Defendants' Motion for Temporary Stay of Discovery, *D.N.N.*, No. 1:25-cv-01613-JRR, ECF 107 at 5 n.2 (D. Md. Oct. 5, 2025) (explaining that "[i]n a separate FOIA litigation, ICE produced daily detention logs that show, among other data, the cell assignments of individuals detained at the Baltimore Hold Rooms" and describing Exhibit C as an example).

[17] *See* Doe Decl., *D.N.N.*, No. 1:25-cv-01613-JRR, ECF 127-10, ¶ 8 ("While I was at the Baltimore Hold Rooms, I was not given access to a Pashtu interpreter, even though my English is not fluent and I need an interpreter to talk about my case."); Akolisa Decl., *D.N.N.*, No. 1:25-cv-01613-JRR, ECF 127-11 ¶ 10 ("[O]ther people in the holding room at Baltimore ICE Field Office of Hispanic origin could not communicate with the ICE officers as a result of not being proficient in English."); Tlapanco Peralata Decl., *D.N.N.*, No. 1:25-cv-01613-JRR, ECF 127-15 ¶ 9 ("While in the Baltimore ICE Hold Rooms I was never given the opportunity to speak through an interpreter

in the video published online assert that they have legal documentation, suggesting that they may not be subject to removal and have instead been wrongfully detained, and subject to the alleged conditions of detention, on the basis of protected characteristics.[18] Thus, information about the demographics of individuals that have been detained in hold rooms is relevant to our investigation of potential civil rights violations.

**Third**, the legal bases for arrest and detention are relevant to OAG's investigation of potential civil rights violations, including due process and equal protection violations. Baltimore ICE officials have attributed overcrowding and extended duration of detention in hold rooms, in part, to federal policy mandating the detention of individuals for civil immigration-law violations.[19] Specifically, President Trump's January 20, 2025 Executive Orders ordered the

---

and I refused to sign any papers that the officers asked me to sign since I cannot write or read in English.").

[18] *See* Williams, *supra* note 4.

[19] In a January 30, 2025 memorandum from the Baltimore Deputy Field Office Director to ICE's Assistant Director for Custody Management seeking a waiver of the 12-hour hold limit, the Deputy Director noted the Baltimore Field Office does not have any detention space in the State of Maryland. Memorandum from Nikita Baker, Deputy Field Office Director, Baltimore Field Office, to Monica Burke, Assistant Director, Custody Management (Jan. 30, 2025), *D.N.N.*, No. 1:25-cv-01613-JRR, ECF 40-2 (D. Md. Dec. 23, 2025) [hereinafter "January 30, 2025 ICE Memorandum"]. In 2021, Maryland enacted the Dignity Not Detention Act, which, *inter alia*, "prohibit[s] certain governmental entities from entering into agreements facilitating immigration-related detention by private entities; prohibit[s] governmental entities from entering into certain agreements to house immigration-related detainees; [and] require[es] governmental entities to terminate certain existing contracts for the detention of immigration-related detainees," thereby limiting the availability of detention space. Detention Not Dignity Act, H.B. 16, 2021 Leg., 443rd Sess. (Md. 2021); 2021 Md. Laws ch. 19. The Deputy Director explained further that "[a]n increased nationwide operating posture has been implemented making detention space less readily available" which "has significantly impacted the [Baltimore Field Office] hold room times while pending approval and transfer of aliens for detention space." January 30, 2025 ICE Memorandum. Indeed, "[d]ue to increased operational demands based on the President's executive orders declaring a national emergency, [the Baltimore Field Office] received a waiver to the 12-hour hold policy on February 5, 2025, permitting a 48-hour extension to detain individuals in the Holding Facility for processing." Respondents-Defendants' Responses to Petitioners-Plaintiffs' First Set of Interrogatories (Sept. 8, 2025), Exhibit 14 to Plaintiffs' Renewed Motion for Class Certification and Preliminary Injunction, *D.N.N.*, No. 1:25-cv-01613-JRR, ECF 127-16 at 15 (D. Md. Dec. 23, 2025). And on June 24, 2025, ERO issued a waiver nationwide granting all ICE holding facilities no more than 72 hours, absent exceptional circumstances, to "house" individuals in a holding facility. Memorandum from Monica Burke, Assistant Director, Custody Management, to All ERO Field Office Directors (June 24, 2025), *D.N.N.*, No. 1:25-cv-01613-JRR, ECF 40-3, at 1 (D. Md. Dec. 23, 2025). This waiver was necessary because "as a result of increased enforcement efforts" "ERO field offices no longer have the option to discretionarily release aliens, nor decline to take aliens into custody from our counterparts in Homeland Security Investigations . . . or U.S. Customs

Secretary of Homeland Security "to take all appropriate actions" "to ensure the detention of aliens apprehended for violations of immigration law pending the outcome of their removal proceedings or their removal from the country, to the extent permitted by law,"[20] and "to detain, to the fullest extent permitted by law, aliens apprehended for violations of immigration law until their successful removal from the United States" and "issue new policy guidance or propose regulations regarding the appropriate and consistent use of lawful detention authority under the INA, including the termination of the practice commonly known as 'catch-and-release,' whereby illegal aliens are routinely released into the United States shortly after their apprehension for violations of immigration law."[21]  Since then, the federal government has adopted various policies reinterpreting the INA, including to mandate detention for noncitizens who entered without inspection and deny them bond hearings, as well as to expand the use of expedited removal and deny certain noncitizens the procedural protections associated with full removal proceedings.  These policies have been challenged on a variety of bases, including for violating due process of law.[22]

The Fifth Amendment protects *all* persons in the United States from the deprivation of life, liberty, or property without due process of law.[23]  To the extent individuals have been subject to the overcrowding and other conditions described above because they have been denied due process protections (e.g., access to legal counsel, right to individualized determinations of danger or flight risk) due to their protected status as noncitizens, there may be ongoing civil rights violations in connection with ICE detention in the Fallon Federal Building.  Information about the legal bases for detaining these individuals, including whether these individuals have been arrested and

---

and Border Protection" and "[a]s a result of these constraints, ERO field offices have had to resort to holding aliens in holding facilities beyond than the 12-hour limit."  *Id.* at 2.

[20] *Protecting the American People Against Invasion*, Exec. Order No. 14,159, § 10, 90 Fed. Reg. 8443, 8445 (Jan. 20, 2025).

[21] *Securing Our Borders*, Exec. Order No. 14,165, § 5, 90 Fed. Reg. 8467, 8468 (Jan. 20, 2025).

[22] *See* Brief for the State of New York et al. as Amicus Curiae, *Maldonado Bautista v. Noem*, No. 5:25-cv-01873, ECF 53 (C.D. Cal. Sept. 2, 2025) (challenging federal government's new policy of mandatory detention for all noncitizens who entered the United States without inspection); Brief for the State of New York et al. as Amicus Curiae, *Rodriguez Vazquez v. Bostock*, No. 25-6842, ECF 40.1 (9th Cir. Jan. 28, 2026) (same); *see also* Brief for the State of California et al. as Amicus Curiae,  *Make the Road N.Y. v. Noem*, No. 25-5320 (D.C. Cir. Nov. 10, 2025) (challenging federal government's new policy expanding the use of "expedited removal").

[23] U.S. Const. amend. V; *Mathews v. Diaz*, 426 U.S. 67, 77 (1976) ("The Fifth Amendment . . . protects every one of these [noncitizens within the jurisdiction of the United States] . . . . Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to that constitutional protection."); *Plyler v. Doe*, 457 U.S. 202, 215 (1982) (holding that unlawfully present aliens are entitled to both due process and equal protection under the Fourteenth Amendment).

detained pursuant to erroneous interpretations of the INA resulting in the denial of due process protections, is therefore relevant to OAG's investigation of potential civil rights violations.

We believe this letter satisfies our *Touhy* obligations. If you disagree, please contact undersigned counsel as soon as possible. In light of the serious alleged deprivations of basic human rights, we appreciate your attention and cooperation in this matter.[24]

Sincerely,

Jonathan Smith
Assistant Attorney General
Division Chief
Civil Rights Division, 19th Flr.
Office of Attorney General
200 St. Paul Plaza
Baltimore, MD 21202
P: 410-576-7844
jsmith@oag.maryland.gov

Adam Kirschner
Senior Assistant Attorney General
Unit Chief, Federal Accountability Unit

---

[24] In the February 9, 2025 memorandum requesting medical personnel, the Deputy Field Office Director warned that "the absence of medical staff [at the Baltimore Field Office] to provide [medical] support could potentially lead to liability issues or, in the worst-case scenario, fatalities." February 9, 2025 ICE Memorandum, *supra* note 12, at 3. As of December 18, ICE reported that at least 25 detainees had died in its custody nationwide since January 2025. *See Clarke v. U.S. Dep't of Homeland Sec'y*, No. 25-CV-6773 (GRB), 2025 WL 3674471, at *6 (E.D.N.Y. Dec. 18, 2025) (finding that "largely unrebutted" evidence "demonstrates that ICE has been deploying its 'holding rooms' in a manner that shocks the conscience" and noting that "revelations of abysmal, unlawful treatment come at the end of a year in which ICE reported the death of 25 detainees held in its custody").

Office of the Attorney General
Civil Division
200 Saint Paul Place
Baltimore, MD 21202
P: 410-576-6424
AKirschner@oag.maryland.gov

| Investigation of U.S. Immigration and | IN THE |
| Customs Enforcement "Hold Rooms" in the | CIVIL RIGHTS DIVISION |
| George H. Fallon Federal Building, 31 | OF THE OFFICE OF |
| Hopkins Plaza, Baltimore, MD 21201 | THE ATTORNEY GENERAL OF |
| | MARYLAND |

## <u>ADMINISTRATIVE SUPBOENA</u>

ISSUED TO:    U.S. Immigration and Customs Enforcement
Enforcement & Removal Operations, Baltimore Field Office
George H. Fallon Federal Building
31 Hopkins Plaza
Baltimore, MD 21201

SERVED ON:    U.S. Immigration and Customs Enforcement
Office of the Principal Legal Advisor
500 12th St. SW, Mail Stop 5900
Washington, DC 20536–5900
OPLAServiceIntake@ice.dhs.gov

Office of the General Counsel
U.S. Department of Homeland Security
245 Murray Lane, SW, Mail Stop 0485
Washington, DC 20528–0485
ogc@hq.dhs.gov

**YOU ARE HEREBY COMMANDED** by the authority of the State of Maryland and the Attorney General of Maryland, pursuant to the provisions of Md. Code Ann State Gov't, § 20-1044(b), to produce on or before February 13, 2026, the documents described below to the attention of:

**Jonathan M. Smith**
Assistant Attorney General
Division Chief
Civil Rights Division, 19th Flr.
Office of Attorney General
200 St. Paul Plaza
Baltimore, MD 21202

Assistant Attorney General
Division Chief
Civil Rights Division, 19th Flr.
Office of Attorney General
200 St. Paul Plaza
Baltimore, MD 21202
P: 410-576-7844
jsmith@oag.maryland.gov

# DEFINITIONS

1.      The terms **"and"** and **"or"** shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

2.      The term "**any**" shall be construed as synonymous with "every" and "all" shall be all-inclusive.

3.      **"Document"** means any written, recorded, or graphic material of any kind, whether prepared by you or by any other person, that is in your possession, custody, or control. The term includes, but is not limited to, the following: agreements; contracts; lease agreements; memoranda; reports; letters; notices; diagrams; charts; graphs; photographs; videos; notes; notebooks; spreadsheets; work sheets; photocopies; drafts, whether or not they resulted in a final document; interoffice and intra-office communications; electronic mail (email); instant messages; telephone calls; voice mails; text messages; minutes of meetings, conferences, and telephone or other conversations or communications; ledgers; financial statements; microfilm; microfiche; tape or disc recordings; and computer print-outs.

The term "document" also includes electronically stored data from which information can be obtained either directly or by translation through detection devices or readers; any such document is to be produced in a reasonably legible and usable form. The term "document" includes all drafts of a document and all copies that differ in any respect from the original, including any notation, underlining, marking, or information not on the original. The term also includes information stored in, or accessible through, computer or other information retrieval systems (including any computer archives or back-up systems), together with the associated metadata, instructions, and all other materials necessary to use or interpret such data compilations.

Without limitation on the term "control" as used in the preceding paragraph, a document is deemed to be in your control if you have the right to secure the document or a copy thereof from another person, including but not limited to, your past or present agents, employees, or representatives acting on your behalf.

4.      **"Detainee"** means an individual in the custody of U.S. Immigration and Customs Enforcement.

5.      The term **"Detention Logs"** refers to the written logs described in Section 5.8(1) of U.S. Immigration and Customs Enforcement Directive 11087.2: Operations of ERO Holding Facilities.[1]

6.      **"Employee"** means a natural person who is employed on either a part-time or full-time basis with you.

---

[1] *See* U.S. Immigr. Customs & Enf't, Off. of Enf't & Removal Operations (ERO), Directive 11087.2: Operations of ERO Holding Facilities § 5.8(1), (2024), https://www.ice.gov/doclib/foia/policy/directive11087.2.pdf.

**7.**     The **"Fallon Federal Building"** means the George H. Fallon Federal Building located at 31 Hopkins Plaza, Baltimore, Maryland, 21201.

**8.**     **"Hold Room"** means a holding cell, cell block, or other secure enclosure within a holding facility," as well as any other similar temporary detention facilities, used to detain individuals in the custody of U.S. Immigration and Customs Enforcement, within the last twelve (12) months or a different specified timeframe, in the Fallon Federal Building.

**9.**     **"Holding Facility"** means a facility that contains hold rooms that are primarily used for the short-term confinement of individuals who have recently been detained, or are being transferred to or from a court, detention facility, other holding facility, or other agency.

**10.**     The term **"Holding Facility Inspection Logs"** refers to the written logs described in Section 5.8(2) of U.S. Customs and Immigration Enforcement Directive 11087.2: Operations of ERO Holding Facilities.

**11.**     **"You"** and **"your"** as used herein means the U.S. Department of Homeland Security and U.S. Immigration and Customs Enforcement.

## <u>INSTRUCTIONS</u>

**1.**     **Documents No Longer in Possession of Respondent/Destroyed Documents:** If any responsive document was, but no longer is, in your possession, custody or control, produce a description of each such document. The description shall include the following:

a.     the name of each author, sender, creator, and initiator of such document;
b.     the name of each recipient, addressee, or party for whom such document was intended;
c.     the date the document was created;
d.     the date(s) the document was in use;
e.     a detailed description of the content of the document;
f.     the reason it is no longer in your possession, custody, or control; and
g.     the document's present whereabouts.

If the document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the document was destroyed or otherwise disposed of, and the date and manner of the disposal.

**2.**     **Organization of Responses**: The documents produced shall be identified and segregated to correspond with the number and subsection of the request. Identical copies of responsive documents need not be produced. However, any copy of a document that differs in any manner, including but not limited to the presence of handwritten notations, shall be produced.

**3.**     **Electronic Sources:** Produce documents from all sources, including all electronic sources and devices. Electronic devices include, but are not limited to, desktops, laptops, iPads, tablets, cellphones, desk phones, and all other electronic devices where responsive documents

are stored.

**4. Electronic Documents:** If any responsive document is available in electronic format, the document shall be provided in electronic format.

**5. Format of Electronic Documents:** Produce all documents in either PDF, TXT, DOC format with associated OCR text, together with industry standard Nextpoint load files and associated files including, but not limited to, all dat., opt., txt., and tiff files. Preserve all metadata in the documents that are produced. To the extent available, produce all data in an Excel format, otherwise as a Comma Separated Value text file with a txt. or csv. extension. All documents should also be produced in their native format with reference to any associated document ID. Such electronic records and data should be provided on generally supported storage media, either through a ZIP file or a shared OneDrive folder that the Office of the Attorney General can set up. If preferred by the parties, the electronic records and data can be provided on a universal serial bus (USB) or external hard drive.

**6. Privileged Documents:** If any responsive document is withheld under any claim of privilege, provide a detailed privilege log that contains at least the following information for each document that you have withheld:

a. the name of each author, writer, sender, creator, or initiator of such document;
b. the name of each recipient, addressee, or party for whom such document was intended;
c. the date of such document, or an estimate thereof if no date appears on the document;
d. the general subject matter of the document; and
e. the claimed grounds for withholding the document, including — but not limited to — the nature of any claimed privilege and grounds in support thereof.

**7. Duty to Supplement:** All document requests are continuing in nature so as to require supplementary documents if you obtain further responsive documents.

**8. Duty to Preserve Documents**: All documents and/or other data related to this administrative subpoena's subject matter or requests must be preserved. Any destruction involving such documents must cease, even if it is your normal or routine course of business to delete or destroy such documents or data, and even if you believe such documents or data are privileged or otherwise need not be produced.

**9. Questions Regarding the Production:** Any and all questions regarding the production, including the meaning of any request should be directed to Jonathan Smith jsmith@oag.maryland.gov. You are encouraged to contact Mr. Smith promptly regarding any questions or concerns to ensure efficiency and to eliminate any unnecessary burden of production or review of the documents.

# DOCUMENT REQUESTS

1.      All documents produced in discovery to the Plaintiffs in *D.N.N. et al. v. Baker et al.*, No. 1:25-cv-01613-JRR (D. Md. 2025).

2.      All documents related to any report, assessment, or investigation conducted by any officer or agent of the United States, or by any person on behalf of the United States, of the conditions in or operation of the Hold Rooms in the Fallon Federal Building within the last eighteen (18) months.

3.      All complaints or grievances or other communications received by any agent, agency, or contractor of the United States within the last twelve (12) months from any person, including Detainees, their counsel or other persons acting on behalf of Detainees, public or elected officials, or the media and any response to complaints, grievances, or report concerning the treatment of Detainees in the Hold Rooms in the Fallon Federal Building or the conditions in the Hold Rooms in the Fallon Federal Building, including but not limited to:

      a.      Access to medical care, medications, mental health services, or health services;
      b.      Access to counsel or the denial of access to counsel;
      c.      Use of force against detainees;
      d.      Food, nutrition, and hydration;
      e.      Sanitation and access to toilet and running water;
      f.      Crowding and access to proper bedding; and
      g.      Heating, cooling, or proper ventilation.

4.      All documents that relate or refer to injuries, illnesses, or health care needs of Detainees in the Hold Rooms in the Fallon Federal Building within the last twelve (12) months, including but not limited to requests for health care by Detainees or persons requesting on their behalf, reports, complaints or grievances, medical records, investigative reports, or records or logs of transport to a hospital or other medical facility for health care needs.

5.      All documents related to the use of force against any Detainee in the Hold Rooms in the Fallon Federal Building in the last twelve (12) months.

6.      All contracts for services for Detainees in the Hold Rooms in the Fallon Federal Building that were in effect or entered into in the last twelve (12) months for:

      a.      Medical services;
      b.      Food;
      c.      Bedding or furniture;
      d.      Sanitation supplies; and
      e.      Heating, cooling, or ventilation.

7.      The Detention Log(s) for each Detainee in a Hold Room in the Fallon Federal Building in the last twelve (12) months.

8.      To the extent not included in the Detention Logs referenced in Request 7 above, the specific Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*, provision(s) for the removal and detention, if applicable, of any Detainee in a Hold Room in the Fallon Federal Building in the last twelve (12) months.

9.      The Holding Facility Inspection Logs for U.S. Immigration and Customs Enforcement in the Fallon Federal Building in the last twelve (12) months.