## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| STATE OF MARYLAND,<br><br>Plaintiff,<br><br>v.<br><br>TODD M. LYONS, *ET AL*.,<br><br>Defendants. | Civil Action No. 1:26-cv-01024-JRR |

### DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, CROSS MOTION FOR SUMMARY JUDGMENT

Defendants, Todd M. Lyons, Acting Director, United States Immigration and Customs Enforcement ("ICE"), Markwayne Mullin,[1] Secretary, United States Department of Homeland Security ("DHS"), by its counsel, Kelly O. Hayes, United States Attorney for the District of Maryland, and S. Nicole Nardone, Assistant United States Attorney for that district, hereby move the Court to dismiss or enter summary judgment on the Complaint in favor of Defendants in this case pursuant to Federal Rule of Civil Procedure 56. Defendants' arguments in support of this motion are fully set forth in the attached Memorandum of Law. A proposed order is attached.

---

[1] Markwayne Mullin was recently confirmed as Secretary of the United States Department of Homeland Security. Pursuant to Federal Rule of Civil Procedure 25(d), Madam Clerk shall substitute Markwayne Mullins for Kristi Noem as a Defendant in this action.

Respectfully submitted,

KELLY O. HAYES
United States Attorney

    */s/ S. Nicole Nardone*
S. Nicole Nardone
Assistant United States Attorney
U.S. Attorney's Office
District of Maryland
36 S. Charles Street, 4th Floor
Baltimore, Maryland 21201
(410) 209-4882
Nicole.Nardone@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 11, 2026, I electronically filed the foregoing Defendants' Motion To Dismiss, Or In The Alternative, Cross Motion For Summary Judgment, a supporting memorandum of law, and a proposed order with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all counsel.

        */s/ S. Nicole Nardone*
S. Nicole Nardone

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

STATE OF MARYLAND,

    Plaintiff,

v.

TODD M. LYONS, *ET AL*.,

    Defendants.

Civil Action No.  1:26-cv-01024-JRR

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO DISMISS OR, IN THE ALTERNATIVE, CROSS MOTION FOR
SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

I.      INTRODUCTION………………………………………………………..…………1

II.     BACKGROUND…………………………………………………………….…………1

        A.      Maryland's Subpoena and *Touhy* Request…………………………………...1

        B.      Defendants' February 25, 2026 Response………………………………..……..2

        C.      Maryland's February 27, 2026 Reply ……………………………..……....6

        D.      Defendants' March 6, 2026 Request for Additional Time………………………..7

        E.      Maryland's March 10, 2026 Complaint and March 26, 2026
                Motion for Summary Judgment………………………………………………..7

III.    ARGUMENT…………………………………………………………………..8

        A.      THE COMPLAINT SHOULD BE DISMISSED UNDER FED.R.CIV.P.
                12(b)(1) AND 12(b)(6) AS THE COURT LACKS JURISDICTION AND
                MARYLAND FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY
                BE GRANTED……………………………………………………………8

                1.      Standards of Review…………………………………………………..8

                        a.      Rule 12(b)(1), Motion to Dismiss for Lack of Subject-Matter
                                Jurisdiction……………………………………………………..8

                        b.      Rule 12(b)(6), Motion to Dismiss for Failure to State a Claim…...9

                        c.      Rule 56, Motion for Summary Judgment…………………………10

                2.      The Complaint Fails To State A Claim Under The APA As DHS's
                        Denial of Maryland's Invalid Subpoena Did Not Give Rise To Legal
                        Rights Or Consequences …………………………………..……………11

                        a.      The Issuance Of The Subpoena Was *Ultra Vires*, As The Plain
                                Terms Of Md. Code Ann., State Gov't § 20-1041 Does Not
                                Authorize A Subpoena To The Federal Government…………..11

                                i.      The Plain Language Of Md. Code Ann., State Gov't
                                        § 20-1041 Authorizes Civil Rights Actions Against
                                        Any "Person Engaged In Discrimination" And Specifically
                                        Excludes Actions Against the State, Its Local Governments
                                        or Political Subdivisions…………………………..…..12

ii.     The Statute As A Whole, As Well As The Legislative History, Indicates That Md. Code Ann., State Gov't § 20-1041 Was Intended To Prosecute Private Actors And Exclude Governmental Actors……………………..13

b.     Because The Subpoena Was Invalid, Maryland Is Unable To Demonstrate That Its Denial Gave Rise To Any "Legal Rights Or Consequences" Upon Which the State of Maryland May Establish Standing Or Based Upon Which This Court Could Assume Jurisdiction Or Provide A Legal Remedy Under The APA……14

B.     EVEN IF THE SUBPOENA WERE VALID, DHS'S DENIAL OF MARYLAND'S *TOUHY* REQUEST WAS NOT ARBITRARY AND CAPRICIOUS……………………………………………………………16

1.     Standard of Review………………………………………………16

2.     DHS's *Touhy* Regulations…………………………………………18

3.     The Record Shows That DHS Provided A Reasoned Explanation For Denial Of Plaintiff's Subpoena Based On Its *Touhy* Regulations……….19

IV.     CONCLUSION…………………………………………………………..23

## I.   INTRODUCTION

Plaintiff, State of Maryland, brings this action under the Administrative Procedure Act ("APA") based on an administrative subpoena it served on DHS and ICE in furtherance of its investigation into potential civil rights violations in connection with individuals in temporary ICE custody at the hold rooms in the Fallon Federal Building in Baltimore. However, Maryland's administrative subpoena -- issued pursuant to State law Md. Code Ann., State Gov't § 20-1044(b) -- is *ultra vires* as that statute does not authorize a subpoena to an agency of the federal government.

Because the administrative subpoena was legally invalid, Maryland cannot demonstrate that its denial by DHS gave rise to any "legal rights or consequences" upon which the State may establish standing or based upon which this Court could assume jurisdiction or provide a legal remedy. Therefore, Maryland's Complaint should be dismissed in its entirety or summary judgment should be entered in favor of Defendants.

Even if the Court were to find the subpoena was legally valid (which it should not), the Court should find that Defendants provided a satisfactory and reasoned explanation based on the DHS *Touhy* regulations for denying Maryland's subpoena.

## II.   BACKGROUND

### A.   Maryland's January 30, 2026 Subpoena and *Touhy* Request

The State of Maryland ("Maryland") alleges that, in late January 2026, in response to media reports and other information, it launched an investigation of potential civil rights violations in connection with temporary custody by ICE in the Fallon Federal Building ("Hold Room Investigation"). ECF No. 1 (Complaint, "*Compl.*") at ¶¶ 26-28. Maryland alleges that, in furtherance of its investigation, on January 30, 2026, it sent an administrative subpoena for

documents to the targets of its investigation, DHS and ICE. *Compl.* at ¶ 46, citing ECF No. 1-13 (Maryland's *Touhy* Letter and Administrative Subpoena); *see also* ECF No. 14-14-7 Administrative Record (hereafter "A.R.") at 1-17. As stated in its Complaint, Maryland issued the subpoena pursuant to State law Md. Code Ann., State Gov't § 20-1044(b), which it alleged authorized its request for documents in connection with an investigation of civil rights violations, including "whether any persons are being denied basic constitutional rights based on their national origin, race, or ethnicity." *Compl.* at ¶ 48. On its face, the subpoena provides:

> **YOU ARE HEREBY COMMANDED** by the authority of the State of Maryland and the Attorney General of Maryland, pursuant to the provisions of **Md. Code Ann., State Gov't § 20-1044(b)**, to produce on or before February 13, 2026 . . .

A.R. 11 (emphasis added). Plaintiff's Complaint summarizes the information sought in the subpoena and the substance of the *Touhy* letter. *Compl.* at ¶¶ 48-49, 52-53; *see also* A.R. at 1-17.

### B.      Defendants' February 25, 2026 Response

On February 12, 2026, an attorney with ICE's Office of the Principal Legal Advisor ("OPLA"), sent an email to Maryland confirming that DHS and ICE had received the *Touhy* letter and subpoena on January 30, 2026, acknowledging the February 13, 2026, purported deadline for response, and requesting "a brief extension" to February 20, 2026. *See* A.R. 19. That same day, Maryland counsel agreed to the one-week extension, stating that Maryland expected to receive a response on or before February 20, 2026. *See* A.R. 18. Also the same day, the ICE OPLA attorney responded, acknowledging the extension. *See* A.R. 61. Having not heard back on February 20, 2026, Maryland counsel emailed ICE OPLA attorneys on February 21, 2026 for an update. A.R. 60-61.

On February 25, 2026, ICE OPLA provided a response to the subpoena and *Touhy* request. *See* A.R. 21-26, 60. ICE OPLA's letter summarized DHS's *Touhy* regulations and provided that

2

it had "reviewed [the] subpoena and accompanying letter" and determined that the requests "as currently phrased and scoped, at least in part, do not meet the requirements of [DHS's *Touhy* regulations at] 6 C.F.R. § 5.45." A.R. 22. As a general matter, ICE OPLA observed that, as Maryland's claims "pertain[ed] to information already available to the parties in *D.N.N. et al. v. Baker et al.,"* that information could be "requested from the Court by the State of Maryland." A.R. 22-23. ICE OPLA also noted that the information sought likely fell within the purview of other agencies or components other than ICE. *See* A.R. 23. Finally, ICE OPLA stated that, to the extent the requests called for legal conclusions and/or expert or opinion testimony, such testimony and information was generally prohibited under 6 C.F.R. § 5.49. *Id.*

ICE OPLA then provided specific objections to each category of requested material. *See* A.R. 23-26. *With regard to Request #1*, seeking discovery produced in *D.N.N. et al. v. Baker et al.,* No. 1:25-cv-01613-JRR (D. Md. 2025), ICE OPLA objected to the request as overly broad, unduly burdensome and duplicative, objected to the breadth and nature of the request as it could potentially include privileged information that is part of the deliberative process, and objected as the information sought, if produced, could violate the Privacy Act of 1974, 5 U.S.C. § 552a, or otherwise cause an unwarranted invasion of personal privacy. *See* A.R. 23. ICE OPLA also objected to the extent the requested information had already been produced in *D.N.N. et al. v. Baker et al.* and could be obtained by Plaintiff through a request to the Court as *amicus curiae*, subject to the protective order that is in place. *Id.*

*With regard to Requests #2-5*: seeking: "[a]ll documents related to any report, assessment, or investigation . . . of the conditions in or operation of the Hold Rooms in the Fallon Federal Building within the last eighteen (18) months" (*Request #2*); "[a]ll complaints or grievances or other communications received by any agent, agency, or contractor of the United States within the

last twelve (12) months from any person . . . concerning the treatment of Detainees in the Hold Rooms in the Fallon Federal Building or the conditions in the Hold Rooms in the Fallon Federal Building" (*Request #3*); "[a]ll documents that relate or refer to injuries, illnesses, or health care needs of Detainees in the Hold Rooms in the Fallon Federal Building within the last twelve (12) months" (*Request #4*); and "[a]ll documents related to the use of force against any Detainee in the Hold Rooms in the Fallon Federal Building in the last twelve (12) months" (*Request #5*), ICE OPLA objected to the requests as overly broad, unduly burdensome and duplicative; objected to the extent that they potentially sought information that was protected as deliberative-process, attorney-client, attorney work product and/or law enforcement sensitive, and objected to the extent they sought information that if disclosed would violate the Privacy Act or otherwise cause an invasion of personal privacy. *See* A.R. 23-26. ICE OPLA also objected to the requests as overly broad in that they requested records that may be in possession of another component and/or agency, and records which may have been exchanged during the discovery process and already been produced in *D.N.N. et al. v. Baker et al.,* noting that "[r]equesting ICE to re-produce records that are being provided in a lawsuit in which the State of Maryland is *amicus* and may request access to such discovery from the Court is duplicative and thus unduly burdensome." *Id.*

*With regard to Request #6*, seeking "[a]ll contracts for services for Detainees in the Hold Rooms in the Fallon Federal Building that were in effect or entered into in the last twelve (12) months," ICE OPLA objected to this request as overly broad, unduly burdensome, duplicative, and lacking in specificity, noting there was an insufficient proffer of the relevance for each of the requested categories of services given the claims in the request letter, and objected to the extent it sought information that if disclosed would violate the Privacy Act or otherwise cause an invasion of personal privacy. *See* A.R. 25. ICE OPLA also objected to the request as overly broad in that it

requested records that may be in possession of another party, such as a contractor, and the information may have been exchanged during the discovery process in *D.N.N. et al. v. Baker et al.,* noting that "[r]equesting ICE to re-produce records that are being provided in a lawsuit in which the State of Maryland is *amicus* and may request access to such discovery from the Court is duplicative and thus unduly burdensome." *Id.*

*With regard to Requests #7 and #9* seeking "[t]he Detention Log(s) for each Detainee in a Hold Room in the Fallon Federal Building in the last twelve (12) months," and "[t]he Holding Facility Inspection Logs for U.S. Immigration and Customs Enforcement in the Fallon Federal Building in the last twelve (12) months," ICE OPLA objected to these requests as overly broad, unduly burdensome, and duplicative, and objected to the extent they sought information that if disclosed would violate the Privacy Act or otherwise cause an invasion of personal privacy. *See* A.R. 25-26. ICE OPLA also objected as another component and/or agency may be in possession of the records, which may have been exchanged during the discovery process in *D.N.N. et al. v. Baker et al.,* noting that "[r]equesting ICE to re-produce records that are being provided in a lawsuit in which the State of Maryland is *amicus* and may request access to such discovery from the Court is duplicative and thus unduly burdensome." *Id.*

*With regard to Request #8*, seeking "the specific Immigration and Nationality Act, 8 U.S.C. § 1101 et seq., provision(s) for the removal and detention, if applicable, of any Detainee in a Hold Room in the Fallon Federal Building in the last twelve (12) months," ICE OPLA objected to this request as vague, ambiguous, overly broad, unduly burdensome and duplicative, noting that it was "not clear how the statutes for removal and detention are related to your investigation." A.R. 25. ICE OPLA also objected as this information may have been exchanged during the discovery process in *D.N.N. et al. v. Baker et al.* and "thus requesting ICE to re-produce records that are in

5

possession, custody, and control of another party and which a party in amicus curiae may obtain by a request to the Court is duplicative and thus unduly burdensome." *Id.*

In closing, ICE OPLA stated that the "foregoing objections [were] not exclusive" and it "reserve[d] the right to assert further objections in response to the subpoena as appropriate." A.R. 26. ICE OPLA also "reserve[d] any and all privileges and other grounds for non-disclosure that may apply to the information requested." *Id.* ICE OPLA provided, "assuming that your requests to which we objected were modified to appropriately narrow and identify the information sought, the nature of the requests would likely still raise a potential that they seek information, the disclosure of which would violate the Privacy Act . . . or otherwise cause an unwarranted invasion of personal privacy" and that "[i]n any event, the information requested would still likely be unduly burdensome and duplicative given the information being exchanged during the discovery process in *D.N.N. et al. v. Baker et al.*" *Id.* Nonetheless, ICE OPLA provided that Plaintiff should reach out "[i]n the event [they] wish[ed] to revise the requests to which [ICE OPLA] objected . . . or to meet and confer regarding this matter before any formal submission of a revised request." *Id.*

### C.     Maryland's February 27, 2026 Reply

On February 27, 2026, Maryland sent a letter to ICE OPLA in response to its February 25, 2026 letter, detailing numerous alleged deficiencies in its response. *See* A.R. 27-34. In particular, Maryland alleged that ICE OPLA failed to adequately identify or address the factors it was required to consider under 6 C.F.R. § 5.48(a); provided little to no explanation for its objections to  requests as "overly broad"; that ICE OPLA's objection to requests as "unduly burdensome" appeared to be premised on the "factually incorrect assertion" that the requests were "duplicative" of materials produced in the *D.N.N.* litigation and the "legally incorrect assertion" that Plaintiff could obtain the requested documents "even though Plaintiff is not a party to that litigation and

6

confidential material are protected from disclosure pursuant to a court order"; that ICE OPLA "mistakenly invoked privacy concerns to object to certain requests that [did] not seek protected information, and to the extent th[e] requested documents implicate[d] privacy concerns, did not offer to redact or otherwise anonymize protected information"; and that ICE's OPLA's denial ignored Maryland's detailed, written explanation of how the documents sought were relevant to Maryland's investigation. *Id.* At the close of its February 27, 2026, letter, Maryland requested ICE OPLA respond by March 6, 2026. *See* A.R. 33.

> ### D.     Defendants' March 6, 2026 Request for Additional Time

On March 6, 2026, ICE OPLA responded to Maryland's letter, indicating that "[t]o assist the Maryland Attorney General's Office to the best of our ability, we need additional time to confer internally to determine if we can implement reasonable parameters to sharing information responsive to your *Touhy* request and administrative subpoena." A.R. 58. ICE OPLA provided that it "should be able to provide a further response by Monday, April 6, 2026." *Id.* The same day, Maryland responded, providing only "[i]t has now been five weeks since we initially served our *Touhy* request. As we have detailed, however, this matter is of great urgency. We do not consider a monthlong delay to decide whether you 'can' produce anything to be reasonable or consistent with your *Touhy* obligations." A.R. 57. The same day, ICE OPLA responded, stating "[r]eceived. We will stay focused on resolving this matter as soon as possible." *Id.*

> ### E.     Maryland's March 10, 2026 Complaint and March 26, 2026 Motion for Summary Judgment

On March 10, 2026, Maryland filed its three-count Complaint in this matter seeking declaratory and injunctive relief. *See gen. Compl.* The Complaint alleges that the "Hold Room Investigation is conducted by Maryland's Civil Rights Division and Federal Accountability Unit pursuant to Maryland laws that authorize the Attorney General to conduct investigations of

7

potential civil rights violations and actions or inactions by the federal government that threaten the public interest and welfare of Maryland residents." *Compl*. at ¶ 29, *citing* Md. Code Ann., State Gov't § 20-1041(a), and Md. Code Ann., State Gov't § 6-106.1(b)(1). In Count I of the Complaint, Maryland raises claims under the Administrative Procedure Act ("APA"), alleging that ICE's response to its administrative subpoena was "not in accordance with law" and "without observance of procedure required by law." *Compl*. at ¶¶ 70-77, citing 5 U.S.C. § 706(2)(A), (D). In Count II, Maryland alleges that ICE's response to its administrative subpoena was "arbitrary" or "capricious" under 5 U.S.C. § 706(2)(A) of the APA. *Id.* at ¶¶ 78-88. Finally, in Count III, Maryland moves the Court to "compel agency action" on its subpoena that it alleges has been "unlawfully withheld or unreasonably delayed" citing 5 U.S.C. § 706(1). *Id.* at ¶¶ 89-98. On March 26, 2026, Maryland filed a Motion for Summary Judgment based on its claims. ECF No. 6.

## ARGUMENT

**A. THE COMPLAINT SHOULD BE DISMISSED UNDER FED.R.CIV.P. 12(b)(1) AND 12(b)(6) AS THE COURT LACKS JURISDICTION AND MARYLAND FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

### 1. Standards of Review and Dismissal

#### a. Rule 12(b)(1), Motion to Dismiss, Lack of Subject Matter Jurisdiction

A defendant can move for dismissal of a plaintiff's case under Rule 12(b)(1) for lack of subject matter jurisdiction by asserting the plaintiff does not have any "right to be in the district court at all." *Holloway v. Pagan River Dockside Seafood, Inc*., 669 F.3d 448, 452 (4th Cir. 2012). Federal district courts are courts of limited jurisdiction, constrained to exercise only the authority conferred by Article III of the United States Constitution and affirmatively granted by federal statute. *Kokkonen v. Guardian Life Ins. Co*., 511 U.S. 375, 377 (1994). The plaintiff bears the burden of establishing the court's power to hear their case. *In re Moore*, 488 F. Supp. 3d 231, 235

(D. Md. 2020). In ruling on a Rule 12(b)(1) motion, the Court "may consider evidence outside of the pleadings without converting the motion to one for summary judgment." *Id.* at 236.

### b.    Rule 12(b)(6), Motion to Dismiss for Failure to State a Claim

To defeat a Rule 12(b)(6) motion, a complaint must allege sufficient facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice and are not entitled to the assumption of truth. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). A court is also "not obliged . . . to accept as true the allegations of the complaint that conflict with its exhibits."  *Moretti v. Thorsdottir*, 157 F.4th 352, 359 (4th Cir. 2025). The factual allegations that are taken as true "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In deciding a Rule 12(b)(6) motion, courts "may consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned without converting the motion into one for summary judgment under Rule 12(d)." 5B Wright & Miller, Fed. Prac. & Proc. § 1357 (4th ed. 2025). Specifically, "the court may take judicial notice of publicly available information on state and federal government websites without converting the motion to one for summary judgment." *Est. of Green v. City of Annapolis*, Case No. 24-cv-1351-MJM, 2025 WL 1029555, at *4 (D. Md. Apr. 7, 2025), quoting *Est. of Green v. City of Annapolis*, 696 F. Supp. 3d 130, 147 (D. Md. 2023). See also *United States v. Garcia*, 855 F.3d

9

615, 621 (4th Cir. 2017) ("This court and numerous others routinely take judicial notice of information contained on state and federal government websites.").

### c.    Rule 56, Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In a case involving review of a final agency action under the APA, however, the standard set forth in Rule 56(a) does not apply because of the limited role of a court in reviewing the administrative record." *Nat'l Fed'n of the Blind v. Abilityone Comm'n*, 421 F.Supp. 3d 102, 114 (D. Md. 2019), citing *Otsuka Pharm. Co., Ltd. v. Burwell*, Civ. No. GJH-15-852, 2015 WL 3442013, at *5 (D. Md. May 27, 2015). Summary judgment thus serves merely as the "mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and is otherwise consistent with the APA standard of review." *Id.* "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id.*, quoting *Air Transp. Ass'n of Am. v. U.S. Dep't of Agric.,* 303 F. Supp. 3d 28, 38 (D.D.C. 2018)).

### 2.    The Complaint Fails To State A Claim Under The APA, As DHS's Denial Of Maryland's Legally Invalid Subpoena Did Not Give Rise To Legal Rights Or Consequences

The APA waives the government's sovereign immunity from suit and permits federal court review of final agency actions, when the relief sought is other than money damages and the plaintiff has stated a claim "that an agency or an officer or employee thereof acted or failed to act in an official capacity . . . " 5 U.S.C.A. § 702.  As the Supreme Court has instructed, an agency action may be considered "final" only when the action signals the consummation of an agency's decisionmaking process and gives rise to legal rights or consequences. *COMSAT Corp. v. Nat'l*

*Sci. Found.,* 190 F.3d 269, 274 (4th Cir. 1999), citing *Bennett v. Spear*, 520 U.S. 154, 177–78, (1997). Here, because Maryland's subpoena is legally invalid, Maryland is unable to demonstrate that its denial by DHS gave rise to any legal rights or consequences under the APA. Therefore, this Court lacks jurisdiction over its claims.

> **a.      Maryland's Subpoena Was *Ultra Vires* As Md. Code Ann., State Gov't § 20-1044 Does Not Authorize A Subpoena To The Federal Government**

As acknowledged in the Complaint, Maryland issued its subpoena pursuant to State law Md. Code Ann., State Gov't § 20-1044(b). *Compl.* at ¶ 48.[2] Because Md. Code Ann., State Gov't § 20-1044(b) does not provide a legal basis for Maryland's subpoena to a federal government agency, it is *ultra vires* and does not provide standing for Maryland to bring this suit in district court under the APA against the federal government. As discussed *infra*, the plain language, statutory construction and legislative history of Md. Code Ann., State Gov't § 20-1041 indicate that it does not provide authority for Maryland to issue a subpoena to the federal government. *See Bobreski v. U.S. E.P.A.,* 284 F. Supp. 2d 67, 75 (D.D.C. 2003) (noting that "the starting point, and

---

[2] Although Maryland's *Touhy* letter and Complaint also contain references to Md. Code Ann., State Gov't § 6-106.1-- which purports to provide the Attorney General with the authority to "investigate any action that is based on the federal government's action or inaction that threatens the public interest and welfare of the residents of the State"-- this statute is not cited in the administrative subpoena and therefore cannot serve as a legal basis for the issuance of the subpoena. *See A.R.* 1-17*; Compl.* at ¶ 29. Maryland Rule 2–510 prescribes the proper use, issuance, form, and service of subpoenas; Maryland Rule 2-510(3) provides "except as otherwise permitted by law, a subpoena may not be used for any other purpose." Notably, Maryland attempts to conflate these provisions in its Motion for Summary Judgment, asserting that it "issued a subpoena pursuant to State law authorizing the request for documents in connection with an investigation of civil rights violations", citing both Maryland Rule Maryland Ann. Code State Gov't § 20-1044 and § 6-603(a)(2) (ECF No. 6-1 at 8), which is plainly inaccurate and inconsistent with the assertions in the Complaint and on the face of the administrative subpoena. *See Compl.* at ¶ 48 and A.R. 11 (administrative subpoena, commanding production of documents pursuant to Md. Code Ann State Gov't, § 20-1044(b)).

the most traditional tool of statutory construction is to read the text itself" but that a court should also consider the statutory language, the design of the statute, as well as its legislative history).

> **i. The Plain Language Of Maryland Ann. Code State Gov't § 20-1041 Authorizes Civil Rights Actions Against Any "Person Engaged In Discrimination" And Specifically Excludes Actions Against the State, Its Local Governments or Political Subdivisions**

The plain language of the civil rights law under which Maryland issued its subpoena does not provide authority for the State to investigate or bring civil rights actions against the federal government. Md. Code Ann., State Gov't § 20-1041(a) provides that "the Attorney General may investigate, prosecute, and remediate, on behalf of the residents of the State, any conduct that constitutes a civil rights violation." Md. Code Ann., State Gov't § 20-1041(a). Section 20-1041(b) specifically limits civil rights actions under the statute, providing that "[t]he Attorney General may not bring a civil rights action under this part:

> (1) on behalf of an individual;
> (2) against a political subdivision;
> (3) against any unit of State or local government established by law; or
> (4) against any employee or agent of an entity identified in item (2) or (3) of this subsection who is acting under the color of law.

Md. Code Ann., State Gov't § 20-1041(a). Section 20-1042 provides that "the Attorney General may commence a civil action in accordance with this part" if "the Attorney General has reason to believe that a person is engaged in discrimination prohibited by the U.S. Constitution, the Maryland Constitution, or State or federal law." Md. Code Ann., State Gov't § 20-1042(a). "Person" for purposes of the statute is defined as "an individual, receiver, trustee, guardian, personal representative, fiduciary, representative of any kind, corporation, partnership, business trust, statutory trust, limited liability company, firm, association, or other nongovernmental entity." MD

Gen. Provis. § 1-114. Therefore, by its plain language Md. Code Ann., State Gov't § 20-1041 does not provide authority for Maryland to issue a subpoena to an agency of the federal government.[3]

> **ii.    The Statute As A Whole, As Well As The Legislative History, Indicates That Md. Code Ann., State Gov't § 20-1041 Was Intended To Prosecute Private Actors And Exclude Governmental Actors**

A review of the statute as a whole, as well as its legislative history, makes clear that Md. Code Ann., State Gov't § 20-1041 was intended to investigate and prosecute private actors and exclude governmental actors. As noted, Md. Code Ann., State Gov't § 20-1042 provides that the intent of the statute is to bring civil rights actions against "persons" and § 20-1041(b) specifically excludes actions against the state, its local governments or political subdivisions. Consistent with this text, the testimony of the Office of the Attorney General, available on the State's website, with regard to the bill at the time it was enacted, provided:

> [i]f enacted into law, this bill would authorize the Office of the Attorney General ("OAG") *to investigate, prosecute, and remediate civil rights violations by private actors*, if the OAG has reasonable cause to believe that a person is engaged in a discriminatory act. This bill takes a measured approach to these investigations and specifically *does not give my office jurisdiction over governmental entities*.

*https://mgaleg.maryland.gov/cmte_testimony/2023/jud/1nOwLCSy2dBQpGZ00yHb1GBSlOtSzZ-fe.pdf* (emphasis added).

---

[3] Maryland Ann. Code State Gov't § 20-1044 does provide Maryland the power to issue subpoenas to "persons" who are the target of investigations under the law. *See* Md. Code Ann., State Gov't § 20-1044(a), providing: Before initiating a civil action, the Office of the Attorney General shall conduct a preliminary investigation to determine whether there is reasonable cause to believe that any person committed a civil rights violation; (b) During any examination, investigation, or hearing, the Office of the Attorney General may: (1) subpoena witnesses; (2) administer oaths; (3) examine individuals under oath; and (4) compel production of records, books, papers, contracts, and other documents.

As both the overall language of the statute and its legislative history indicate that Md. Code Ann., State Gov't § 20-1041 was intended to prosecute private actors and not government actors -- and certainly not the federal government -- Maryland's issuance of its subpoena under this statute to an agency of the federal government was *ultra vires* and therefore invalid.

**b.       Because The Subpoena Is Invalid, Maryland Is Unable To Demonstrate That Its Denial By DHS Gave Rise To Any "Legal Rights Or Consequences" Upon Which Maryland May Establish Standing Or For Which This Court Could Fashion A Legal Remedy Under The APA**

Under Article III of the U.S. Constitution, federal courts only have subject-matter jurisdiction over "cases" or "controversies." U.S. Const. art. III, § 2, cl. 1. An "essential and unchanging part of the case-or-controversy requirement" is that plaintiffs must have standing to bring their cases. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). This requirement ensures that federal courts "exercise their proper function in a limited and separated government," by deciding only "real controvers[ies] with real im-pact on real persons," rather than issuing advisory opinions. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423-24 (2021) (internal quotation marks omitted); *see Maryland v. U.S. Dep't of Agric.*, 151 F.4th 197, 208 (4th Cir. 2025).

The "irreducible constitutional minimum" of standing consists of three elements: (1) an injury in fact that is (2) fairly traceable to the defendant's action and (3) likely to be redressed by a favorable decision. *Lujan,* 504 U.S. at 560-61. A plaintiff pleads a cognizable injury in fact when he or she "clearly" alleges facts "demonstrating" that he or she has suffered an injury that is "concrete and particularized" and "actual or imminent," as opposed to "conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338-39 (2016) (internal quotation marks omitted). For an injury to be concrete, it must either be a tangible injury such as a "physical" or "monetary" harm, or an intangible harm "traditionally recognized as providing a basis for lawsuits

14

in American courts," such as reputational harm. *TransUnion,* 594 U.S. at 425. A bare statutory violation is insufficient. *Id.* at 426.

"The Supreme Court has recognized that certain intangible injuries, including an 'informational injury,' can support standing." *State of Maryland v. United States Dep't of Agric.*, 151 F.4th 197, 217 (4th Cir. 2025) (Benjamin, J., dissenting), citing *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 24–25 (1998); *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989). However, "a statutory violation alone, does not create a concrete informational injury sufficient to support standing." *Id.* at 217-18, citing *Dreher v. Experian Info. Sols., Inc.,* 856 F.3d 337, 345 (4th Cir. 2017). "Instead, a 'constitutionally cognizable informational injury requires that a person lack access to information *to which he is legally entitled* and that the denial of that information creates a 'real' harm with an adverse effect." *Id.* at 218, citing *Dreher,* 856 F.3d at 345. (emphasis added). Because Maryland cannot establish that it is legally entitled to the information sought through its invalid subpoena, it cannot establish an injury-in-fact as a result of DHS's response to the subpoena and thus cannot establish standing under the APA.  *See Bobreski v. U.S. E.P.A.,* 284 F. Supp. 2d 67, 78 (D.D.C. 2003) (concluding that because ALJ did not have statutory authority to subpoena Environmental Protection Agency inspector, the Court lacked subject-matter jurisdiction over plaintiff's APA claim.)

To satisfy the third element of standing, redressability, a plaintiff "'must show that it is likely . . . that the injury will be redressed by a favorable [judicial] decision.'" *Deal v. Mercer Cnty. Bd. of Educ.,* 911 F.3d 183, 189 (4th Cir. 2018), quoting *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018).  As part of this consideration, the court must ask whether its "even capable of providing the remedy the plaintiff seeks" either because the requested relief is "not available" or because it would "otherwise have the federal court act beyond its proper

15

role in a system of separated powers and dual sovereignty with the states." *State of Maryland.,* 151 F.4th at 213, citing *Lewis v. Casey*, 518 U.S. 343, 385 (1996) (Thomas, J., concurring) ("Principles of federalism and separation of powers impose stringent limitations on the equitable power of federal courts."), *Richard H. Fallon, Jr., The Fragmentation of Standing,* 93 Tex. L. Rev. 1061, 1110–11 (2015) ("In actions for equitable remedies ... the concerns bearing on standing merge along a spectrum with concerns about whether the relief sought would overreach the bounds of judicial competence or enmesh the issuing court in functions more properly reserved to democratically accountable institutions.").

In its Prayer for Relief, Maryland asks, *inter alia*, that this Court "declare that Defendant ICE's February 25, 2026 denial of Maryland's January 30, 2026, subpoena is "contrary to law and/or arbitrary and capricious" and "order DHS and ICE to produce the documents requested." *Compl.* at p. 30. Although, pursuant to the APA, the Court may "compel agency action unlawfully withheld or unreasonably delayed" (5 U.S.C. § 706(1)), it cannot do so here where Maryland's subpoena was *ultra vires* and is invalid. Therefore, the Court is without jurisdiction to provide Plaintiff's requested remedy.

**B.      EVEN IF THE COURT WERE TO FIND THE SUBPOENA LEGALLY  VALID, DHS'S DENIAL OF MARYLAND'S *TOUHY* REQUEST WAS NOT ARBITRARY AND CAPRICIOUS**

**1.      Standard of Review**

Under the APA, the Court shall only "hold unlawful and set aside agency action, findings and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Nat'l Fed'n of the Blind*, 421 F. Supp. 3d at 114 (D. Md. 2019) (agency action will be set aside if the agency relied "on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem,

16

offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise"). Review under the APA is "highly deferential," with a presumption that the agency decision is valid. *Id*. The "ultimate standard of review is. . . narrow[,]" and the Court is "not empowered to substitute its judgment for that of the agency." *Id*. at 115.

When reviewing an agency decision, federal courts must "review an agency's decision solely by the grounds invoked by the agency." *Jimenez-Rodriguez v. Garland*, 996 F.3d 190, 194 (4th Cir. 2021), citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943)) (internal quotations omitted). To that end, judicial review of an agency's decision is generally restricted to the administrative record. *See e.g.*, *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985); *Audubon Naturalist Soc'y of the Cent. Atl. States, Inc. v. U.S. Dep't of Transp.*, 524 F. Supp. 2d 642, 659 (D. Md. 2007). That is, claims seeking review under the APA "are adjudicated without a trial or discovery, on the basis of an existing administrative record. . . [and accordingly] are properly decided on summary judgment." *Audubon Naturalist Soc'y of the Cent. Atl. States, Inc. v. U.S. Dep't of Transp*., 524 F. Supp. 2d 642, 659 (D. Md. 2007).

"There can be no doubt that the proper mechanism for obtaining judicial review of an agency's refusal to disclose documents and information is through the APA." *Maryland v. Smith,* 766 F. Supp. 3d 498, 510 (D. Md. 2025). This is so because absent the APA's waiver of sovereign immunity, sovereign immunity would bar a "federal court from reviewing an agency's final action or otherwise compelling an agency to act contrary to its decision on a *Touhy* request." *Id.* The Fourth Circuit has also confirmed that "courts should review" a federal agency's "refusal to comply with a third-party subpoena under the arbitrary and capricious standard set forth in" the APA. *In re Subpoena to Nat'l Sci. Found., Office of Inspector Gen*., No. 3:18-mc-6-JAG, 2018

17

WL 5017612, at \*2 (E.D. Va. Oct. 16, 2018), citing *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 274 (4th Cir. 1999). As the Fourth Circuit has observed, an agency's refusal "is essentially a policy decision about the best use of the agency's resources." *COMSAT Corp.,* 190 F.3d at 278. "Reviewing courts, therefore, must 'defer to the agency's judgment, recognizing . . . that federal Judges -- who have no constituency -- have a duty to respect legitimate policy choices made by those who do.'" *In re Subpoena to Nat' Sci. Found*, 2018 WL 5017612, at \*2, quoting *COMSAT Corp.*, 190 F.3d at 278.

### 2.        DHS's *Touhy* Regulations

Pursuant to 5 U.S.C. § 301, "commonly known as the 'Housekeeping Statute,' federal agencies are granted authority to prescribe regulations governing the agency, including regulations for 'the custody, use, and preservation of its records, papers, and property." *U.S. v. Williams*, 170 F.3d 431, 433 (4th Cir. 1999) (quoting § 301).  In *United States ex rel. Touhy v. Ragen*, 340 U.S. 468 (1951), the Supreme Court "recognized the validity of a Justice Department order . . . which restricted the disclosure of information pursuant to the Housekeeping Statute, noting that 'when one considers the variety of information contained in the files of any government department and the possibilities of harm from unrestricted disclosure in court, the usefulness, indeed the necessity, of centralizing determination as to whether the subpoenas duces tecum will be willingly obeyed or challenged is obvious.'" *Id.* Thus, the regulations promulgated by federal agencies governing the disclosure of information in state court proceedings to which the government was not a party came to be known as *Touhy* regulations.

DHS has promulgated regulations pursuant to 5 U.S.C. § 301 and *Touhy*, to apply to requests for the production of its records. *See* 5 U.S.C. § 301; 6 C.F.R. §§ 5.41-5.49. Accordingly, to obtain records from DHS or its components, including DHS-ICE, a requestor must submit a

18

written statement that summarizes the information sought and its relevance to the proceeding. *See* 6 C.F.R. § 5.45(a). DHS and its components cannot produce responsive records without first obtaining the appropriate internal approval. 6 C.F.R. § 5.44. In determining whether it may produce records, DHS considers whether disclosure is precluded under 6 C.F.R. § 5.48, which identifies a variety of considerations, including:

> (1) Whether such compliance would be unduly burdensome or otherwise inappropriate under the applicable rules of discovery or the rules of procedure governing the case or matter in which the demand arose;
>
> (2) Whether compliance is appropriate under the relevant substantive law concerning privilege or disclosure of information;
>
> (3) The public interest;
>
> (4) The need to conserve the time of Department employees for the conduct of official business;
>
> (5) The need to avoid spending the time and money of the United States for private purposes;
>
> (6) The need to maintain impartiality between private litigants in cases where a substantial government interest is not implicated;
>
> (7) Whether compliance would have an adverse effect on performance by the Department of its mission and duties; and
>
> (8) The need to avoid involving the Department in controversial issues not related to its mission.

6 C.F.R. § 5.48(a).

### 3.    The Record Shows That DHS Provided A Satisfactory Explanation For Denial Of Plaintiff's Subpoena Based On Its *Touhy* Regulations

Even assuming, without conceding, that DHS's February 25, 2026 response constituted a discrete and final agency action, that decision was not arbitrary or capricious. *See Nat'l Veterans Legal Servs. Program v. U.S. Dep't of Defense*, 990 F.3d 834, 839 (4th Cir. 2021) ("each of the

19

two components—agency action and finality of agency action—narrows the scope of judicial review"). The Court should find that Defendants provided a satisfactory and reasoned explanation based on its *Touhy* regulations for denying Maryland's subpoena.

Maryland's subpoena included nine document requests, all of which sought documents related to the Fallon Federal Building ICE hold rooms. *See* A.R. 11-17. As this Court is aware, and Plaintiffs acknowledge, the Fallon Federal Building detention facility is currently under a preliminary injunction and restraining order entered by this Court to ensure that it maintains constitutionally acceptable detention conditions. *Compl.* at ¶ 42. Indeed, Maryland, as *amicus curiae* in that matter, is intimately familiar with the case. *Id*. Further, Maryland concedes that much of the discovery sought through their subpoena to DHS has already been produced by Defendants in the *D.N.N. et al. v. Liggins*, 1:25-cv-01613-JRR, litigation. *Compl.* at ¶ 97.

Based on the foregoing, Defendants reasonably objected to many of Maryland's requests as "burdensome and burdensome and duplicative," noting that the requested information had already been produced in *D.N.N.* and could potentially be obtained through a request to the Court by Plaintiff as *amicus curiae*, subject to the protective order that is in place. *See gen.* A.R. 22-26. DHS's *Touhy* regulations specifically provide for consideration of factors such as avoidance of the expense of unnecessary resources on outside litigation that could have an adverse effect on the agency, its resources and its mission. *See* 6 C.F.R. § 5.48(a) (1), (4)-(7).

The Fourth Circuit has stated that "[w]hen an agency is not a party to an action, its choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources." *COMSAT*, 190 F.3d at 278. "This compromise between public and private interests is necessary to conserve agency resources and to prevent the agency from becoming embroiled in private litigation." *Id.* In this regard, the Fourth Circuit has observed that

20

an agency may properly consider the "potential cumulative burden" of compliance, as other private litigants may seek information if the agency complies in the instant dispute. *Id.*

Based on the foregoing, "courts have routinely concluded that an agency's refusal to comply with a subpoena on the grounds of undue burden is neither arbitrary or capricious." *City of Huntington v. AmerisourceBergen Drug Corp.,* No. CV 3:17-01362, 2020 WL 4511490, at *6 (S.D.W. Va. Aug. 5, 2020)*,* citing *Cabral v. v. U.S. Dep't of Justice,* 587 F.3d 13, 23-24 (1st Cir. 2009) ("[T]he DOJ reasonably concluded that further disclosures . . . would have been cumulative and unduly burdensome."); *RLI Ins. Co. v. Nexus Services, Inc.,* Civil Action No. 5:18-CV-00066, 2020 WL 1496466, at *3 (W.D. Va. Jan. 17, 2020) (neither arbitrary or capricious where one stated reason for denial of discovery request was "compliance would be unduly burdensome"); *Sauer Inc. v. Lexington Ins. Agency, Inc., No.* 5:13-CV-180-F, 2014 WL 5580954, at *6 (E.D.N.C. Oct. 31, 2014) (Army Corps determination that not complying with the deposition subpoena would "conserve governmental resources where the United States is not a party to a suit, and [] minimize governmental involvement in controversial matters unrelated to official business" was not arbitrary and capricious) (citations omitted); *see also Westchester Gen. Hosp., Inc. v. Dep't of Health & Human Servs*., 770 F. Supp. 2d 1286, 1298 (S.D. Fla. 2011), citing *Moore v. Armour Pharm. Co.,* 927 F.2d 1194, 1198 (11th Cir. 1991) (While "any given request may seem small in isolation, . . . an agency has an interest in protecting itself against the cumulative disruption to its duties that would come with routinely granting requests for [information].")

Further, courts have upheld as reasonable objections to subpoenas where the requesting party has failed to demonstrate that the information sought was not reasonably available from other sources.  See e.g. *Fareed v. Cent. Rivers Power MA, LLC,* No. CV 3:20-11053-MGM, 2021 WL 3634158, at *5–6 (D. Mass. Aug. 17, 2021) (Federal Energy Regulatory Commission's ("FERC")

21

determination that Plaintiff did not make reasonable efforts to obtain documents from other sources before turning to FERC was not arbitrary or capricious.)

DHS also objected to many of the requests because they sought information which involved medical conditions or other private information that, if produced, would violate the Privacy Act or otherwise cause an unwarranted invasion of personal privacy. Such considerations are also appropriate pursuant to DHS's *Touhy* regulations, *see* 6 C.F.R. § 5.48(a) (2), and have been upheld as reasonable. *See e.g. Kimberlin v. Frey*, No. GJH-13-3059, 2016 WL 8668334, at *2 (D. Md. June 2, 2016) (finding the F.B.I.'s citation to its *Touhy* regulations and the Privacy Act as a reasonable basis for its refusal to comply with subpoena). DHS's objections based on attorney-client privilege and work product are also supported by DHS's *Touhy* regulations, see 6 C.F.R. § 5.48(a) (2), and were not arbitrary and capricious.

In light of the foregoing, Defendants response was reasonably articulated and in accordance with DHS's *Touhy* regulations. See *Sauer Inc.* 2014 WL 5580954 at *4; see also *Spence v. NCI Info. Sys.*, Inc., 530 F. Supp. 2d 739, 745 (D. Md. 2008). Maryland has failed to show that Defendants' response was "arbitrary and capricious." There is no evidence that Defendants "relied on facts which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [that its response was] so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Spence*, 530 F. Supp. 2d at 734-44, quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 44 (1983). Further, to the extent Plaintiff argues that Defendants' responses failed to identify the specific *Touhy* regulation they were taking into consideration, this argument is without merit. ECF 6-1 at 23-24. The agency is "not required to utter some formulaic incantation" of its consideration of the

22

applicable *Touhy* regulations in order to satisfy the APA. *Spence,* 530 F. Supp. 2d at 745 (upholding an agency's refusal to comply with a subpoena where the agency did not "refer specifically" to the applicable *Touhy* regulations but where the grounds for refusal were "readily discernable").

## IV.     CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court dismiss the Complaint or enter summary judgment in its favor.

Respectfully submitted,

KELLY O. HAYES
United States Attorney


    /s/ S. Nicole Nardone
S. Nicole Nardone
Assistant United States Attorney
U.S. Attorney's Office
District of Maryland
36 S. Charles Street, 4th Floor
Baltimore, Maryland 21201
(410) 209-4882
S.Nicole.Nardone@usdoj.gov

23