**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| STATE OF MARYLAND, <br><br> Plaintiff, <br><br> v. <br><br> DAVID VENTURELLA,[1] *et al.*, <br><br> Defendants. | Civ. No. 1:26-cv-01024-JRR |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, CROSS-MOTION FOR SUMMARY JUDGMENT**

---

[1] Pursuant to Fed R. Civ. P. 25(d), David Venturella is automatically substituted for Todd M. Lyons as Senior Official Performing the Duties of the Director, U.S. Immigration and Customs Enforcement.

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

    I.    This Court should deny Defendants' motion to dismiss or, in the alternative, cross-motion for summary judgment. ...................................................................................................... 2

        A. Standard of Review .................................................................................................. 3

        B. Defendants' motion to dismiss pursuant to Rule 12(b)(1) should be denied because the State has standing. ................................................................................................... 4

            i. Defendants' motion to dismiss fails because OAG's subpoena is valid even under Defendants' interpretation of OAG's authority. ...................................... 5

                1.    OAG is authorized by Maryland's Civil Rights Statute to investigate potential civil rights violations. .............................................................. 6

                2.    OAG is authorized to investigate conduct by private actors .............. 7

                3.    OAG can issue a subpoena to third-party witnesses in connection with its investigation of conduct by private actors. ...........................11

            ii. Alternatively, Defendants' motion to dismiss fails because it relies on a misinterpretation of the State's enforcement authority. .................................. 15

                1.    In evaluating Maryland state law, this Court should effectuate the broad purposes of the legislation. .................................................... 15

                2.    The broad purposes of Maryland's Civil Rights Statute show that the Maryland General Assembly did not intend to exempt the federal government. ......................................................................................... 16

        C. Defendants' motion to dismiss pursuant to Rule 12(b)(6), or in the alternative for summary judgment, should likewise be denied because the State has stated a claim for relief under the APA. ........................................................................................ 20

    II.    This Court should grant the State's motion for summary judgment. .............................. 21

        A. Defendants' failure to consider the majority of the regulatory factors shows that their denial of OAG's *Touhy* request was contrary to law. .................................................. 22

        B. Defendants' conclusory defense of their decision-making confirms that Defendants' denial of OAG's *Touhy* request was arbitrary and capricious. .................................... 25

CONCLUSION .......................................................................................................................... 30

# TABLE OF AUTHORITIES

## Cases

*A Soc'y Without a Name v. Virginia*, 655 F.3d 342 (4th Cir. 2011)................................................. 4

*ACLU Found. of Md. v. Leopold*, 223 Md. App. 97 (Md. Ct. Spec. App. 2015) ............................ 8

*Andreas-Myers v. Nat'l Aeronautics & Space Admin.*, No. GJH-16-3410, 2017 WL 1632410 (D. Md. Apr. 28, 2017.) ........................................................................................................ 22

*Appalachian Voices v. U.S. Dep't of Interior*, 25 F.4th 259 (4th Cir. 2022)............................ 23, 24

*Banach v. State Comm'n on Hum. Rels.*, 277 Md. 502 (Md. 1976).................................................. 6

*Bel Air Auto Auction v. Great N. Ins. Co.*, 534 F. Supp. 3d 492 (D. Md. 2021) ........................... 15

*Bethany Boardwalk Grp. v. Everest Sec. Ins. Co.*, 611 F. Supp. 3d 41 (D. Md. 2020), *aff'd mem.*, No. 21-1493, 2022 WL 2128586 (4th Cir. June 14, 2022) ...................................................... 15

*Bowman Transp. v. Ark.–Best Freight Sys.*, 419 U.S. 281, 286 (1974) ........................................ 23

*Breslin v. Powell*, 421 Md. 266 (Md. 2011) ................................................................................. 17

*Cabral v. U.S. Dep't of Just.*, 587 F.3d 13 (1st Cir. 2009)........................................................... 28

*Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc.*, 492 F.3d 484 (4th Cir. 2007) .. 16

*City of Huntington v. AmerisourceBergen Drug Corp.*, No. CV 3:17-01362, 2020 WL 4511490 (S.D. W. Va. Aug. 5, 2020) ...................................................................................................... 28

*Cognizant Tech. Sols. Corp. v. U.S. IRS*, No. CV 23-3320 (PGS) (RLS), 2024 WL 2091284 ..... 25

*Comptroller of Treasury v. Blanton*, 390 Md. 528 (Md. 2006)...................................................... 16

*COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269 (4th Cir. 1999) ........................... 3, 21, 22, 27

*D.N.N. et al. v. Liggins et al.*, No. 1:25 cv-01613-JRR (D. Md. 2025) ........................... 10, 24, 30

*Doan v. Bergeron*, No. 15-CV-11725-IT, 2016 WL 5346936 (D. Mass. Sept. 23, 2016)............. 29

*Dow AgroScis. v. Nat'l Marine Fisheries Serv.*, 707 F.3d 462 (4th Cir. 2013) ............................ 23

*EEOC v. Mar. Autowash, Inc.*, 820 F.3d 662 (4th Cir. 2016)........................................................ 6

*EEOC v. Randstad*, 685 F.3d 433 (4th Cir. 2012)....................................................................... 27

*Evans v. Am. Collection Enter.*, 624 F. Supp. 3d 593 (D. Md. 2022)............................................. 3

*Fox v. Statebridge Co., LLC*, 629 F. Supp. 3d 300 (D. Md. 2022) ................................................. 4

*Friends of Cap. Crescent Trail v. U.S. Army Corps of Eng'rs*, 453 F. Supp. 3d 804

(D. Md. 2020) ............................................................................................................ 22

*Fusaro v. Howard*, 19 F.4th 357 (4th Cir. 2021)................................................................ 15

*Geo Grp., Inc. v. Menocal*, 607 U.S. —, 146 S. Ct. 774 (2026) .................................... 10

*In re Subpoena Duces Tecum*, 228 F.3d 341 (4th Cir. 2000) ......................................... 26

*In re Subpoena to NSF OIG*, No. 3:18-MC-00006-JAG, 2018 WL 5017612 (E.D. Va. Oct. 16, 2018) ........................................................................................................................ 26, 29

*Int'l Ladies' Garment Workers' Union v. Donovan*, 722 F.2d 795 (D.C. Cir. 1985)..................... 29

*Jocelyn C. Route v. Robert F. Kennedy, Jr., Sec'y, U.S. Dep't of Health & Hum. Servs.*, No. CV ELH-24-3732, 2026 WL 1223357 (D. Md. May 5, 2026)......................................... 4

*Johnson v. Mayor & City Council of Baltimore*, 430 Md. 368 (Md. 2013) ............................... 16

*Kerns v. United States*, 585 F.3d 187 (4th Cir. 2009)...................................................... 3

*Maryland Elec. Indus. Health Fund v. MESCO, Inc.*, No. CIV.A. ELH-12-505, 2014 WL 853237 (D. Md. Feb. 28, 2014) ............................................................................................... 21

*Mayor & City Council of Baltimore v. Hackley*, 300 Md. 277 (Md. 1984)................................ 17

*Mayor & City Council of Baltimore v. Trump*, 416 F. Supp. 3d 452 (D. Md. 2019) ..................... 3

*Menocal v. GEO Grp., Inc.*, No. 14–CV–02887–JLK, 2017 WL 4334000 (D. Colo. June 6, 2017) ............................................................................................... 11

*Moore v. Armour Pharm. Co.*, 927 F.2d 1194 (11th Cir. 1991) ...................................... 28

*Motor Vehicle Mrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) 23, 30

*Nat'l Fed'n of the Blind, Inc. v. Wal-Mart Assocs., Inc.*, 566 F. Supp. 3d 383 (D. Md. 2021)..... 21

*Nat'l Urb. League v. Ross*, 977 F.3d 770 (9th Cir. 2020) ............................................... 29

*Nebraska v. Su*, 121 F.4th 1 (9th Cir. 2024) ................................................................. 29

*OhioHealth Corp. v. U.S. Dep't of Veteran Affairs*, No. 2:14-CV-292, 2014 WL 4660092 (S.D. Ohio Sept. 17, 2014) ............................................................................................... 25

*Pitts v. United States*, No. 1:26-CV-00809-JPB, 2026 WL 1239296 (N.D. Ga. Apr. 30, 2026)... 28

*Podles v. Consumer Prot. Div.*, 253 Md. App. 262 ( Md. Ct. Spec. App. 2021)........... 6, 12, 13, 14

*Price v. State*, 378 Md. 378 (Md. 2003) ..................................................................... 17

*Puerto Rico v. United States*, 490 F.3d 50 (1st Cir. 2007) ............................................. 28

*Rhoads v. U.S. Dep't of Veterans Affs.*, 242 F. Supp. 3d 985 (E.D. Cal. 2017)...................... 22, 25

*Rode v. Doe*, 28 F.3d 404 (4th Cir. 1994).................................................................................. 15

*Sauer Inc. v. Lexington Ins. Agency, Inc.*, No. 5:13-CV-180-F, 2014 WL 5580954 (E.D.N.C. Oct. 31, 2014) ........................................................................................................................ 29

*Schroeder v. U.S. Dep't of Veterans Affairs*, 673 F. Supp. 3d 1204 (D. Kan. 2023) ..................... 27

*SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735 (1984)....................................................................... 7

*Smith v. FBI*, No. CV 25-12-BAH, 2026 WL 91607 (D. Md. Jan. 13, 2026)............................... 25

*Spence v. NCI Info. Sys.*, 530 F. Supp. 2d 739 (D. Md. 2008) ...................................................... 23

*Tri-City R.R. Co. v. Preferred Freezer Servs. of Richland*, No. 2:19-CV-00045-SAB, 2020 WL 533143 (E.D. Wash. Feb. 3, 2020) ....................................................................................... 26

*United States v. Hill*, 99 F.4th 1289 (11th Cir. 2024), *cert. denied*, 145 S. Ct. 2698, (2025) ......... 9

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950) ...................................................... 6, 14, 26

*Washington Home Remodelers, Inc. v. State, Off. of Att'y Gen., Consumer Prot. Div.*, 426 Md. 613 (Md. 2012) .......................................................................................................... 6, 12, 14

*WFS Fin., Inc. v. Mayor & City Council of Baltimore*, 402 Md. 1 (Md. 2007) ..................... 16, 17

*Williams v. Peninsula Reg'l Med. Ctr.*, 440 Md. 573 (Md. 2014)......................................... 16, 20

*Young v. Martin*, 801 F.3d 172 (3d Cir. 2015).............................................................................. 9

**Statutes**

5 U.S.C. § 706(2)(A)(D) ............................................................................................................ 22

5 U.S.C. §§ 551–559 .................................................................................................................. 21

5 U.S.C. §§701–706 ................................................................................................................... 21

6 C.F.R. § 5.41(c)........................................................................................................................11

6 C.F.R. § 5.48(a)(1), (4)–(7) ..................................................................................................... 23

6 C.F.R. § 5.48(a)(3) ................................................................................................................... 24

6 C.F.R. § 5.48(a)(4) ................................................................................................................... 24

6 C.F.R. § 5.48(a)(5) ................................................................................................................... 23

6 C.F.R. § 5.48(a)(6) ............................................................................................................ 23, 25

6 C.F.R. § 5.48(a)(7) ................................................................................................................... 24

Fed. R. Civ. P. 56(a) ................................................................................................................... 22

Md. Code Ann., Com. Law § 13-101, *et seq.* ........................................................................ 12

Md. Code Ann., Com. Law § 13-405(a) ................................................................................ 12

Md. Code Ann., Corr. Servs. § 8-103(a)(1) .......................................................................... 19

Md. Code Ann., Corr. Servs. § 8-103(b)(2)(i) ...................................................................... 19

Md. Code Ann., Corr. Servs. § 8-113 .................................................................................... 19

Md. Code Ann., State Gov't § 1-101(d) ................................................................................. 8

Md. Code Ann., State Gov't § 20-1040, *et seq.* ............................................................... 1, 17

Md. Code Ann., State Gov't § 20-1041(b)(2) ...................................................................11, 16

Md. Code Ann., State Gov't § 20-1041(b)(3) ......................................................................11

Md. Code Ann., State Gov't § 20-1041, *et seq.* .................................................................. 4

Md. Code Ann., State Gov't § 20-1042 ...............................................................................11

Md. Code Ann., State Gov't § 20-1044(b) ....................................................................11, 12, 16

Md. Code Ann., State Gov't § 6-106 ..................................................................................... 19

Md. Code Ann., State Gov't § 6-106.1 ...............................................................................5, 11

Md. Code Ann., State Gov't § 6-106.1(b)(1)(i), (iii), (viii) .................................................. 12

Md. Code Ann., State Gov't § 6-107 ..................................................................................... 20

Md. Code Ann., State Gov't §§ 9-4004–9-4005 .................................................................... 19

## Miscellanous

ICE, *Detention Management* (Feb. 12, 2026), https://www.ice.gov/detain/detention-management [https://perma.cc/B7RS-5FFH] .................................................................................... 24

Md. Gen. Assembly, Dep't of Legis. Servs., Fiscal and Policy Note (Revised), 2023 Sess., Senate Bill 540 at 1, https://mgaleg.maryland.gov/2023RS/fnotes/bil_0000/sb0540.pdf [https://perma.cc/H825-PH2F]. ..................................................................................... 18

Md. Office of the Att'y Gen., Bill Letter, Senate Bill 540, at 1–2 (Feb. 28, 2023) (Feb. 28, 2023, Bill Letter), https://mgaleg.maryland.gov/cmte_testimony/2023/jud/1nOwLCSy2dBQpGZ00yHb1GBSlOt SzZ-fe.pdf [https://perma.cc/F857-2QBB] ........................................................... 18, 19

**INTRODUCTION**

This is a case about a request for information. Nearly four months after Plaintiff State of Maryland issued an administrative subpoena and *Touhy* request to the U.S. Department of Homeland Security (DHS) and Immigration and Customs Enforcement (ICE), federal defendants have not produced a single document. These documents and official records are relevant to the State's ongoing investigation of potential civil rights violations in the hold rooms used for immigration detention at a federal facility in downtown Baltimore.

Notwithstanding the urgent nature of the State's investigation, Defendants have dragged their feet in responding to the State's limited requests for documents, starting with a blanket denial of the State's *Touhy* request that relied principally on boilerplate objections and now continuing with legal objections raised for the first time in litigation. During the administrative phase, Defendants asserted that they could not provide the subpoenaed information because doing so would create an undue burden. Yet they made no effort to demonstrate what burden they would suffer or why there are no documents whatsoever that could be produced. Now, in response to the State filing this action, Defendants move to dismiss by primarily relying on a legal argument they never asserted during the administrative phase in objecting to the State's subpoena.

Indeed, Defendants' motion to dismiss is based on a flawed theory that the Maryland Office of the Attorney General (OAG) lacks the authority under the State's civil rights statute, Md. Code Ann., State Gov't § 20-1040, *et seq.*, to issue an administrative subpoena to an agency of the federal government. Defendants are wrong in their interpretation that the statute applies only to the conduct of private actors, but their confused reading of the statute does not matter here. That is because even under Defendants' narrow view of OAG's authority, the administrative subpoena is

1

valid, as it also seeks information about the conduct of private actors, specifically private contractors involved in the operation of the hold rooms.

Defendants' response to the State's motion for summary judgment fares no better. They do not raise any serious arguments in defense of their denial of the State's *Touhy* request. Instead, they mostly recite boilerplate objections and fail to respond to nearly all of the State's arguments that Defendants' refusal to comply with the subpoena violates their own regulations and is unreasonable, arbitrary, and capricious in violation of the Administrative Procedure Act (APA).

Defendants are determined to not produce any documents in response to the State's administrative subpoena. But the federal government cannot simply withhold government information from a valid subpoena without providing a reasoned explanation, which they have not and cannot do. Despite repeated opportunities to provide such justification, Defendants continue to offer mostly blanket, unexplained objections. Instead, they attempt to complicate this otherwise straightforward case by raising irrelevant questions about the State's authority to sue the federal government. But at this stage, all the State is asking for is that Defendants produce documents relevant to its ongoing investigation. Should the State pursue litigation in the future based on that investigation, its jurisdiction to do so would be properly resolved in that action, not this one.

For these reasons, the State respectfully requests that this Court deny Defendants' motion to dismiss, or in the alternative, cross-motion for summary judgment; and grant the State's motion for summary judgment.

## **ARGUMENT**

### I. **This Court should deny Defendants' motion to dismiss or, in the alternative, cross-motion for summary judgment.**

Defendants have moved to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Federal Rule of Civil Procedure

12(b)(6). First, Defendants argue that the State cannot establish injury-in-fact or redressability for purposes of Article III standing based on Defendants' refusal to comply with a purportedly invalid subpoena. *See* Defs.' Mem. in Supp. of Mot. to Dismiss, or in Alt., Cross-Mot. for Summ. J. (Defs.' Opening Mem.) at 15–16, ECF 16.[2] Second, Defendants argue that the State has failed to state a claim for relief under the APA because their refusal to comply with a purportedly invalid subpoena is not a final agency action that "gives rise to any legal rights or consequences." *See id.* at 10–11 (citing *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 274 (4th Cir. 1999)). Both motions fail because OAG's administrative subpoena is valid.[3]

### A. Standard of Review

"Rule 12(b)(1) governs motions to dismiss . . . for lack of standing, which pertain to subject matter jurisdiction." *Evans v. Am. Collection Enter.*, 624 F. Supp. 3d 593, 597 (D. Md. 2022) (alteration in original) (citation omitted). "A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed 'in one of two ways': either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the complaint [are] not true.'" *Mayor & City Council of Baltimore v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019) (alteration in original) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). Here, Defendants raise a facial challenge to this Court's jurisdiction, contending that OAG cannot establish standing because OAG's administrative subpoena is purportedly invalid. *See* Defs.' Opp. Mem. at 15–16. "In a facial challenge, 'the facts alleged in the complaint are taken as true, and the motion must be

---

[2] Unless citing to the Administrative Record (A.R.), Plaintiff's citations are to the original page numbers of the original document.

[3] Defendants also move, in the alternative, for summary judgment on the same bases that they move to dismiss. *See* Defs.' Opening Mem. at 8–16.

denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.'" *Mayor & City Council of Baltimore*, 416 F. Supp. 3d at 479 (quoting *Kerns*, 585 F.3d at 192).

"A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by the plaintiff are true, the complaint fails as a matter of law 'to state a claim upon which relief can be granted.'" *Route v. Kennedy*, No. CV ELH-24-3732, 2026 WL 1223357, at *12 (D. Md. May 5, 2026) (quoting Fed. R. Civ. P. 12(b)(6)). A Rule 12(b)(6) motion should be denied if after "separating the legal conclusions from the factual allegations" and "assuming the truth of only the factual allegations" "those allegations allow the court to reasonably infer that the State is entitled to the legal remedy sought." *See Fox v. Statebridge Co., LLC*, 629 F. Supp. 3d 300, 307 (D. Md. 2022) (internal quotation marks omitted) (quoting *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011)).

**B. Defendants' motion to dismiss pursuant to Rule 12(b)(1) should be denied because the State has standing.**

Notwithstanding Defendants' arguments otherwise, the State has suffered an injury-in-fact that is redressable by this Court. The State has sought information through a valid administrative subpoena relevant to an ongoing civil rights investigation that is of significant importance to residents of the State. The harm here is not abstract but flows directly from the State's need for the requested information. And, a court order remanding and ordering the federal government to produce the documents responsive to the subpoena would redress the State's injury.

In their motion to dismiss, Defendants' standing argument rests on their contention that Maryland's Civil Rights Statute, State Gov't § 20-1040, *et seq.*, does not authorize OAG to issue a subpoena to the federal government and, thus, a court order could not redress the State's injury. *See* Defs.' Opening Mem. at 12–16 (contending that OAG's enforcement authority under the

4

statute applies only to the conduct of private actors and, thus, the State "cannot establish an injury-in-fact as a result of" Defendants' refusal to comply with its subpoena).

Defendants' arguments fail for two separate reasons.  First, this Court does not need to reach this statutory question because even under Defendants' narrow reading of the statute, *i.e.*, that OAG's civil rights enforcement authority applies only to the conduct of private actors, the subpoena is still proper.[4]  OAG's investigation of the hold rooms and its administrative subpoena indeed seek information about the conduct of private actors, specifically private contractors involved in the operation of the Baltimore ICE hold rooms.  Second, separately, Defendants misread the statute and its legislative history.  Both reveal a legislative intent to broadly authorize OAG to remedy civil rights violations, including by the federal government.

This Court should deny Defendants' motion to dismiss under Rule 12(b)(1).

### i. Defendants' motion to dismiss fails because OAG's subpoena is valid even under Defendants' interpretation of OAG's authority.

The parties agree that OAG has authority under Maryland's Civil Rights Statute to address conduct that constitutes a potential civil rights violation.  And they agree that, at a minimum, OAG's enforcement authority under this statute covers the conduct of private actors.  As such, Defendants cannot dispute that OAG has authority under Maryland's Civil Rights Statute to issue an administrative subpoena to a third-party as part of an investigation of potentially unlawful conduct by a private actor.  Because OAG's hold room civil rights investigation concerns, in part,

---

[4] The State disputes this narrow reading. *See* section I.B.ii (discussing OAG's broad authority under the Civil Rights Statute).  But for the reasons provided in section I.B.i, this Court need not address the question.  In any event, OAG has separate authority under the Maryland Defense Act (MDA) to investigate and bring certain actions against the federal government.  *See* State Gov't § 6-106.1(b)(1).

the conduct of private actors, OAG's subpoena to Defendants is valid. This Court can deny Defendants' motion to dismiss on this basis alone.

1. OAG is authorized by Maryland's Civil Rights Statute to investigate potential civil rights violations.

Under Maryland law, it is "well settled" that "the Legislature may validly confer upon administrative agencies . . . the power to compel production of information for purposes of preliminary investigation[.]" *Banach v. State Comm'n on Hum. Rels.*, 277 Md. 502, 507 (Md. 1976) (citing two cases, including *United States v. Morton Salt Co.*, 338 U.S. 632, 642–43 (1950)); *Podles v. Consumer Prot. Div.*, 253 Md. App. 262, 271 (Md. Ct. Spec. App. 2021). "To determine the validity of an investigatory subpoena issued by an administrative agency, the following threefold test is applied: '[w]hether the inquiry is authorized by statute, the information sought is relevant to the inquiry, and the demand is not too indefinite or overbroad.'" *Podles*, 253 Md. App. at 268–69 (alteration in original) (quoting *Washington Home Remodelers, Inc. v. State, Off. of Att'y Gen.*, *Consumer Prot. Div.*, 426 Md. 613, 623 (Md. 2012)). Here, Defendants' argument that the State's administrative subpoena is invalid "implicate[s] only the first element: whether the . . . subpoena was authorized by statute." *Id.* at 269; *cf. EEOC v. Mar. Autowash, Inc.*, 820 F.3d 662, 665 (4th Cir. 2016) ("The district court plays a limited role in the enforcement of administrative subpoenas. . . . [C]ourts should look only to the jurisdiction of the agency to conduct such an investigation." (internal quotation marks and citations omitted)).

The parties do not dispute, nor could they, that OAG has authority under Maryland's Civil Rights Statute to investigate conduct that may constitute a potential civil rights violation. *See* Defs.' Opening Mem. at 12. Indeed, OAG has *broad* authority to investigate under this statute, as State Gov't § 20-1041(a) [hereinafter the "investigation provision"] authorizes OAG to investigate "any conduct" that may constitute a civil rights violation and does not specify who can or cannot

be investigated.  *See id.* ("The Attorney General may investigate . . . on behalf of the residents of the State [ ] *any conduct* that constitutes a civil rights violation." (emphasis added)).

In this matter, OAG has a plausible reason to believe that various individuals may be involved in "conduct that constitutes a civil rights violation," State Gov't § 20-1041(a), in connection with the treatment of immigration detainees in the Baltimore ICE hold rooms, *see* OAG *Touhy* Ltr., A.R. at 2–4, 6–7, 8–9 (describing allegations of assault, overcrowding, extended duration of detention, lack of access to medical care, and lack of access to language interpreters, among others); OAG Resp. Ltr., A.R. at 27–28 (describing additional allegations concerning denial of medical care to persons with serious acute and chronic medical needs); Compl. ¶¶ 26–27, 31–33, 35, 39–40 (summarizing allegations from numerous sources).  Thus, OAG's investigation falls within the scope of conduct to be addressed under Maryland's Civil Rights Statute.

2.  <u>OAG is authorized to investigate conduct by private actors.</u>

Defendants' insistence that OAG lacks authority to investigate them is largely beside the point because one target of OAG's investigation is a private contractor.[5]  OAG's investigation has learned that some of the concerning treatment alleged to have occurred in the hold rooms appears attributable to this contractor, and OAG's administrative subpoena seeks information related to the contractor's conduct.  *See*, *e.g.*, OAG Subpoena, A.R. at 16 (requests seeking, among other things, service contracts; documents concerning use of force; and complaints or grievances received by

---

[5] Even though OAG has already described ICE and DHS as targets of its investigation, OAG is not required to notify any potential target that they are the subject of an administrative subpoena, or even to identify all potential targets before issuing the subpoena. *Cf. SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 749–51 (1984) (observing the "difficulty . . . involve[d]" in the "identification of the persons and organizations that should be considered 'targets' of investigations" when the agency often "undertakes investigations into suspicious [conduct] without any knowledge of which of the parties involved may have violated the law").

any contractor regarding the conditions or operations of the hold rooms). Thus, there can be no dispute that OAG's subpoena is valid for purposes of obtaining such information.

Even assuming that Defendants were correct that OAG could enforce Maryland's Civil Rights Statute only against private actors, *see* Defs.' Opening Mem. at 12–14, Defendants would apparently concede that OAG has the authority to investigate the conduct of private actors to determine whether their conduct constitutes a civil rights violation. Indeed, Defendants acknowledge that "State Gov't § 20-1044 does provide Maryland the power to issue subpoenas to 'persons' who are the target of investigations under law." *See* Defs.' Opening Mem. at 13 n.3. Likewise, there can be no dispute that private contractors are "persons," within the meaning of the statute. *See* State Gov't § 1-101(d) (defining "person" as "an individual, receiver, trustee, guardian, personal representative, fiduciary, representative of any kind, corporation, partnership, business trust, statutory trust, limited liability company, firm, association, or other nongovernmental entity"); *ACLU Found. of Md. v. Leopold*, 223 Md. App. 97, 121 (Md. Ct. Spec. App. 2015) (noting that term "person" within the meaning of State Gov't § 1-101(d) is "defined . . . to include not just individuals").[6] Thus, even under Defendants' cramped view of OAG's authority, private contractors are "persons" whose conduct OAG is authorized to investigate and prosecute under the Civil Rights Statute.

Regarding such "persons," the State has indeed alleged that private contractors are involved in the operation of the Baltimore ICE hold rooms. *See* Compl. ¶ 33. As noted in the complaint, a whistleblower who was employed by a private contractor in the Baltimore hold rooms described

---

[6] Defendants appear to suggest that the term "person," *see* State Gov't § 1-101(d), refers solely to a private, or nongovernmental, actor. *See* Defs. Opening Mem. at 12–13. The State does not concede that the term "person" cannot include an agency of the federal government, and notes that Defendants do not cite any Maryland case law to support this proposition.

alleged conditions in the hold rooms, including, among other things, blankets "covered in feces, lice, urine, and throw up."  *See* Compl. ¶ 33 (citing Eric Flack & Ruth Morton, *Former ICE Facility Worker 'saw people laying in feces' at Baltimore Detention Center*, WUSA9 (Feb. 6, 2026, 7:52 PM), https://www.wusa9.com/article/news/investigations/ice-detention-facility-overcrowding-baltimore-whistleblower-dhs-unsanitary-trump/65-03dda8d7-49a9-4caf-b001-db5e12a04158 [https://perma.cc/T6CU-47J2]).  These alleged conditions, along with the purported mistreatment of detainees by private contractors that the whistleblower described, raise civil rights concerns. For example, the whistleblower described one incident that purportedly involved private contractors confining an individual who had returned from the hospital to a "restraint chair" overnight.  *See* Flack & Morton, *supra*.  The whistleblower further alleged that "*contract* security guards lacked training on restraint chair use" and that another guard said the individual was restrained because "the [expletive] kept making noise all night."  *Id.* (emphasis added) (noting further that the "Baltimore ICE facility is run by ICE, but uses private security guards employed by contractor Paragon Professional Services, a subsidiary of Bering Straits Native Corporation").[7] Thus, this alleged abusive use of a restraint chair by a private contractor may constitute a civil rights violation by "persons" within the meaning of State Gov't § 1-101.  *See generally United States v. Hill*, 99 F.4th 1289 (11th Cir. 2024), *cert. denied*, 145 S. Ct. 2698, (2025); *Young v. Martin*, 801 F.3d 172 (3d Cir. 2015).

But the State needs more information to determine whether any such incident has occurred and if so whether it "constitutes a civil rights violation."  To this end, the State has requested

---

[7] The private contractor whistleblower also appeared to provide reporters a screenshot of "a group text message chain" in which a worker allegedly complained that the facility "smells like an animal house at the zoo."  Flack & Morton, *supra*.  Such language may indicate animus that is relevant to a determination of whether any conduct constitutes a civil rights violation.

documents and official records regarding the use of force by *any individual* against detainees. *See, e.g.*, OAG Subpoena, A.R. at 16 (seeking "[a]ll documents related to the use of force against any Detainee in the Hold Rooms . . . in the last twelve (12) months"). And in explaining how its administrative subpoena is not duplicative of the private litigation in this Court, *D.N.N. et al. v. Liggins et al.*, No. 1:25 cv-01613-JRR (D. Md. 2025), the State has specifically identified how its requests regarding use of force are not covered by the private litigation. *See* OAG Resp. Ltr., A.R. at 31 (noting OAG's request for documents concerning use of force to rebut claim that the State's requests are "duplicative"); Pl.'s Mem. in Supp. of Mot. Summ. J. (Pl.'s Opening Mem.) at 20, ECF 6-1 (explaining that none of private litigants' claims allege excessive force and "therefore discovery in that case is unlikely to produce documents on this topic of OAG's investigation"), further showing the State's investigative need for these documents from Defendants.

To be sure, the possible abusive use of a restraint chair is but a single incident among many that may result in a potential enforcement action against a private contractor.[8] In addition to use of force, the State's administrative subpoena seeks documents and official records related to other conduct by private contractors. For example, OAG seeks "contracts for services for Detainees in the Hold Rooms" for medical services, food, bedding or furniture, sanitation supplies, and heating, cooling, or ventilation. *See* OAG Subpoena, A.R. at 16. OAG also seeks documents produced by or potentially concerning private contractors, including "report[s], assessment[s], or investigation[s] conducted by any officer or *agent* of the United States, or *by any person on behalf of the United States*, of the conditions in or operation of the Hold Rooms" and "complaints or grievances or other communications received by *any agent, agency, or contractor* of the United

---

[8] The Supreme Court recently reaffirmed that a private contractor operating on behalf of the federal government could, under certain circumstances, be held liable for certain conduct. *See generally Geo Grp., Inc. v. Menocal*, 607 U.S. —, 146 S. Ct. 774, 784 (2026).

States." *Id.* (emphasis added). This information is properly the subject of an OAG civil rights investigation even under Defendants' narrow view of OAG's authority.

> 3. <u>OAG can issue a subpoena to third-party witnesses in connection with its investigation of conduct by private actors.</u>

Defendants further argue that OAG cannot issue a subpoena under Maryland's Civil Rights Statute to a party it cannot also prosecute under the statute. While the State contests the proposition, this Court does not need to reach the issue. Even if OAG cannot bring a civil action against the federal government under this statute, it can nonetheless issue a subpoena to it as part of a civil rights investigation of conduct by private actors.[9]

In suggesting otherwise, Defendants conflate OAG's subpoena authority with its enforcement authority. *See* Defs.' Opening Mem. at 12–14. Tellingly, the statutory provisions they cite in support refer to OAG's *enforcement* authority, not its *subpoena* authority. *See* State Gov't § 20-1041(b)(2), (b)(3) (exempting state and local government actors from a "civil rights action") [hereinafter the "civil action exemption provision"]; *id.* § 20-1042 (section titled "Civil Actions") [hereinafter the "enforcement provision"].[10]   Rather, State Gov't § 20-1044(b)

---

[9] In any case, Defendants' own regulations require OAG to serve any subpoena targeting contractors on DHS and ICE. *See* 6 C.F.R. § 5.44(b) (defining "employee"); *Menocal v. GEO Grp., Inc.*, No. 14–CV–02887–JLK, 2017 WL 4334000, at \*2 (D. Colo. June 6, 2017) (observing that "[c]ontractors are specifically included in the definition of 'employee' for the purposes of [DHS Touhy] regulations." (citing 6 C.F.R. § 5.41(c)).

[10] Defendants are incorrect when they suggest that the State has misstated the legal basis to issue the administrative subpoena. *See* Defs.' Opening Mem. at 11 n.2. The State has consistently asserted that the subpoena provision, State Gov't § 20-1044(b), provides OAG with the legal basis to issue the administrative subpoena in this matter. *See* OAG Admin. Subpoena, A.R. at 11; OAG *Touhy* Ltr., A.R. at 4; Compl. ¶ 48, ECF 1; Mem. in Supp. of Pl.'s Mot. for Summ. J. (Pl.'s Opening Mem.) at 8, ECF 6-1. The citation to the MDA, State Gov't § 6-106.1(b)(1), in the State's summary judgment memorandum is to underscore that the document request "is in connection with an investigation of civil rights violations," Pl.'s Opening Mem. at 8, as the MDA authorizes OAG to "investigate . . . the federal government's action or inaction that threatens the public interest and welfare of the residents of the State with respect to," among other things, "protecting the health of the residents of the State," " protecting civil liberties," and

[hereinafter the "subpoena provision"] broadly authorizes OAG to issue an administrative subpoena in "any . . . investigation" and does not limit the entities whom OAG is authorized to subpoena when in connection with a civil rights investigation. *See id.* § 20-1044(b).[11] Thus, OAG's subpoena authority under the Civil Rights Statute is broader than its enforcement authority.

The Supreme Court and Appellate Court of Maryland have both held as much in an analogous context concerning OAG's consumer protection statute. *See, e.g.*, *Washington Home Remodelers*, 426 Md. at 631–38; *Podles*, 253 Md. App. at 275–78. Notably, both Maryland's Civil Rights Statute and Maryland's Consumer Protection Act (CPA), Md. Code Ann., Com. Law § 13-101, *et seq.*, grant OAG nearly identical authority to subpoena witnesses and compel the production of documents as part of an investigation. *Compare* State Gov't § 20-1044(b) ("During any examination, investigation, or hearing, the Office of the Attorney General may: (1) subpoena witnesses; (2) administer oaths; (3) examine individuals under oath; and (4) compel production of records, books, papers, contracts, and other documents."), *with* Com. Law § 13-405(a) ("In the course of any examination, investigation, or hearing conducted by him, the Attorney General may subpoena witnesses, administer oaths, examine an individual under oath, and compel production of records, books, papers, contracts, and other documents."). Relevant here, in cases evaluating the scope of OAG's authority to issue an administrative subpoena under the consumer protection statute, Maryland's appellate courts have declined to limit OAG's expansive use of administrative subpoenas. *See Washington Home Remodelers*, 426 Md. at 631–38 (upholding an administrative

---

"protecting the residents of the State against illegal and unconstitutional federal immigration and travel restrictions," State Gov't § 6-106.1(b)(1)(i), (iii), (viii).

[11] The subpoena provision expressly permits OAG to "subpoena witnesses," *see* State Gov't § 20-1044(b), which confirms that OAG can subpoena entities other than investigative targets.

subpoena that sought information related to conduct that may not be a violation of the statute under which the agency issued the subpoena and which the agency may not be able to prosecute); *Podles*, 253 Md. App. at 275–78 (upholding an administrative subpoena that sought information from an individual the administrative agency may not have authority to prosecute pursuant to the statute under which the agency issued the subpoena).

In *Washington Home Remodelers*, OAG issued an administrative subpoena to a home improvement contractor to investigate potential unfair or deceptive trade practices. 426 Md. at 622–23. The contractor argued that OAG's actions were "beyond the coverage of the [Consumer Protection Act] because [OAG] seeks the production of information . . . that relates exclusively to two other statutes" and therefore OAG "has no business asking for the information." *See id.* at 625. OAG responded that an "initial investigation is not an enforcement action" and that it is "authorized to investigate complaints that may for the most part be based on issues outside of the [CPA], provided that the activities complained of constitute a potential violation of the CPA." *See id.* at 628–29. OAG also conceded that while it "has no authority to enforce the provisions of any statute but the CPA" "it does have the regulatory authority to investigate matters which may potentially constitute unfair or deceptive trade practices," and the other conduct "may well constitute violations of the CPA." *Id.* The court agreed, explaining that "an administrative prosecution is not the function and purpose of the initial investigative subpoena." *Id*. at 633.

Similarly, in *Podles*, OAG issued an administrative subpoena to a real estate salesperson to determine whether that real estate broker was involved in certain contracts that may have violated the CPA. *See* 253 Md. App. at 266–67. Notably, the CPA "exempts certain professionals from liability under the [statute] when those individuals are engaged in 'professional services.'" *See id.* at 266 (citing Com. Law § 13-104(1)). The court considered "whether [OAG] is authorized

13

by statute to issue a subpoena in a case . . . where the professional services of the individual target of the subpoena may implicate an exemption from the purview of the" statute. *Id.* at 271. The court concluded OAG had the authority to issue the subpoena, reasoning that the "caselaw makes clear that [OAG] is authorized by statute to investigate potential violations of the []CPA and to issue subpoenas as part of those investigations, even in cases where it is determined later that no violation occurred or in cases where the information being sought may relate to activities proscribed by other statutes" and that, in any case, "not everything a licensed professional does" is exempted under the statute. *Id.* at 275–76. In sum, these cases provide just two examples of the potential breadth of lawful administrative subpoenas.

At this preliminary stage, OAG "must retain the authority to obtain information that enables it to fulfill its statutory mandate." *Washington Home Remodelers*, 426 Md. at 633.

As Maryland's highest court explained, quoting Justice Robert H. Jackson:

The only power that is involved here is the power to get information from those who best can give it and who are most interested in not doing so. . . . [An administrative agency] is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not. When investigative and accusatory duties are delegated by statute to an administrative body, it, too, may take steps to inform itself as to whether there is probable violation of the law.

*Id.* at 634 (quoting *Morton Salt Co.*, 338 U.S. at 642–43).

Because OAG has authority under the Maryland's Civil Rights Statute to issue an administrative subpoena to the federal government as part of an investigation of conduct that constitutes a civil rights violation, its administrative subpoena is in this matter is valid, regardless of whether OAG can ultimately bring a civil action against the federal government, *see Podles,* 253 Md. App. at 275–76, or whether the information requested relates to conduct beyond the scope of Maryland's Civil Rights Statute, *see Washington Home Remodelers*, 426 Md. at 633. Thus, this Court does not need to consider whether the Civil Rights Statute's enforcement authority extends

14

beyond the conduct of private actors because under Defendants' view of OAG's authority, OAG's administrative subpoena is still valid.

### ii. Alternatively, Defendants' motion to dismiss fails because it relies on a misinterpretation of the State's enforcement authority.

To the extent the Court finds it necessary to assess Defendants' statutory argument, this Court should likewise deny Defendants' motion to dismiss.[12] Defendants' argument that OAG's subpoena and investigative authority do not extend to federal government is premised on their misinterpretation of OAG's enforcement authority as limited to private actors. But, in advancing this view, Defendants do not provide any direct textual support for their contention that the statute exempts the federal government. Rather, the overall text broadly authorizes OAG to remedy conduct that constitutes a civil rights violation and does not exempt the federal government from this broad scope of coverage. Further, the statute's legislative history supports the notion that Maryland's Civil Rights Statute does not exempt the federal government from this broad authority.

1. <u>In evaluating Maryland state law, this Court should effectuate the broad purposes of the legislation</u>.

"When interpreting a state statute . . . federal courts should 'apply the statutory construction rules applied by the state's highest court.'" *Fusaro v. Howard*, 19 F.4th 357, 371 n.2 (4th Cir. 2021) (quoting *Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc.*, 492 F.3d

---

[12] Because existing State law is not "clearly insufficient" to predict how Maryland courts would rule, this Court need not certify a question to the Supreme Court of Maryland under Md. Code Ann., Cts. & Jud. Proc. § 12-603; *see Rode v. Doe*, 28 F.3d 404, 407 (4th Cir. 1994); *Bel Air Auto Auction v. Great N. Ins. Co.*, 534 F. Supp. 3d 492, 502 (D. Md. 2021) ("When the Court is satisfied that it is 'able to anticipate the way in which the Maryland Court of Appeals would rule,' certification is not necessary.") (quoting *Bethany Boardwalk Grp. v. Everest Sec. Ins. Co.*, 611 F. Supp. 3d 41, 55 n.6 (D. Md. 2020)), *aff'd mem.*, No. 21-1493, 2022 WL 2128586 (4th Cir. June 14, 2022) (per curiam). Certification also is unnecessary because the involvement of a private contractor means that the answer to this question is not determinative of the issue of the validity of OAG's administrative subpoena, and the delay from certification would be harmful given the emergent nature of OAG's investigation.

484, 489 (4th Cir. 2007)). The "cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature." *Williams v. Peninsula Reg'l Med. Ctr.*, 440 Md. 573, 580 (Md. 2014) (citation omitted). "[I]f the plain meaning of the statutory language is clear and unambiguous, and consistent with both the broad purposes of the legislation, and the specific purpose of the provision being interpreted, [the court's] inquiry is at an end." *Johnson v. Mayor & City Council of Baltimore*, 430 Md. 368, 377 (Md. 2013) (citation omitted).

2. <u>The broad purposes of Maryland's Civil Rights Statute show that the Maryland General Assembly did not intend to exempt the federal government.</u>

Turning first to the statutory text. *See WFS Fin., Inc. v. Mayor & City Council of Baltimore*, 402 Md. 1, 13 (Md. 2007) ("The starting point in statutory interpretation is with an examination of the language of the statute." (citation omitted)). As discussed above, the statute's investigation provision authorizes OAG "to investigate, prosecute, and remediate *any conduct* that constitutes a civil rights violation," State Gov't § 20-1041(a) (emphasis added), and the subpoena provision authorizes OAG to issue a subpoena to any entity as part of that investigation, *see id.* § 20-1044(b). Here, "the language used in the statute" to empower OAG with broad investigative and subpoena authority is "clear, unambiguous, and consistent with [the statute's] objective" to remedy civil rights violations and should therefore "be accorded their ordinary meaning." *See Comptroller of Treasury v. Blanton*, 390 Md. 528, 536–37 (Md. 2006).

While the statute's civil action exemption provision exempts state and local government actors from civil actions under the statute, this provision does not include such an exemption for the federal government. *See* State Gov't § 20-1041(b)(2). The statutory provision states that OAG "may not bring a civil action" under the Civil Rights Statute" in four specific circumstances: "(1) on behalf of an individual; (2) against a political subdivision; (3) against any unit of State or local government established by law; or (4) against any employee or agent of an entity identified in item

16

(2) or (3) of this subsection who is acting under the color of law." *Id.* Thus, when the Maryland General Assembly limited exemptions to state and local government actors, it necessarily excluded the federal government from such an exemption.[13]

To put it another way, Maryland's General Assembly knew how to exempt government actors and chose to exempt only state and local government. *See Comptroller of the Treasury*, 390 Md. at 537 ("Maryland has long accepted the doctrine of *expressio (or inclusio) unius est exclusio alterius,* or the expression of one thing is the exclusion of another."); *cf. WFS Fin., Inc.*, 402 Md. at 14 ("The Legislature listed specific requirements to be accomplished by the lienholder in order to obtain the release of the vehicle. If the Legislature intended payment of towing and storage fees to be a condition precedent to the release of the vehicle to the lienholder, the Legislature could have inserted such a requirement. It chose not to do so."). This Court should "not insert or omit words to make a statute express an intention" to exempt the federal government, "not evidenced in its original form." *See Mayor & City Council of Baltimore v. Hackley*, 300 Md. 277, 283 (Md. 1984).

Because the text of the civil action exemption provision does not encompass the federal government, this Court need look no further to consider the statute's legislative history. *See Breslin v. Powell*, 421 Md. 266, 286–87 (Md. 2011) ("If the language of the statute is clear and unambiguous, courts will give effect to the plain meaning of the statute and no further sleuthing of statutory interpretation is needed."). But should the Court choose to do so, this history would

---

[13] Defendants ignore that Maryland's Civil Rights Statute defines a civil rights violation as "an act of discrimination prohibited under the U.S. Constitution, the Maryland Constitution, or State or federal law." *See* State Gov't § 20-1040. If OAG's jurisdiction was limited solely to private actors, the reference to the U.S. Constitution would be surplusage. "A court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute; nor may it construe the statute with forced or subtle interpretations that limit or extend its application." *Price v. State*, 378 Md. 378, 387 (Md. 2003).

show that Maryland's General Assembly intended to provide Maryland's Office of the Attorney General with broad authority to redress *any conduct* that constitutes a civil rights violation.

The General Assembly's own description of the statute confirms that it provides the Attorney General broad authority. In the bill's Fiscal and Policy Note, the General Assembly noted that "[t]his bill generally . . . grants the Attorney General the power to investigate, prosecute, and remediate *any* conduct that constitutes a civil rights violation," in addition to other grants of authority. *See* Md. Gen. Assembly, Dep't of Legis. Servs., Fiscal and Policy Note (Revised), 2023 Sess., Senate Bill 540 at 1 (emphasis added), https://mgaleg.maryland.gov/2023RS/fnotes/bil_0000/sb0540.pdf [https://perma.cc/H825-PH2F]. Accordingly, the legislative history of the Civil Rights Statute reflects its purpose to provide the Attorney General with broad authority to address civil rights violations.

Further, contemporaneous with the General Assembly's passage of Maryland's Civil Right Statute, Maryland's Attorney General confirmed the broad authority that the statute bestows on the Office of the Attorney General. In a letter reviewing the General Assembly's statutory text, the Attorney General explained that the bill "gives the OAG the broad authority to protect Marylanders from discriminatory practices to ensure a better present and future for them" and notes that "OAG has the power and the resources to handle large investigations and particularly egregious cases." Md. Office of the Att'y Gen., Bill Letter, Senate Bill 540, at 1–2 (Feb. 28, 2023) [hereinafter "Feb. 28, 2023, Bill Letter"], https://mgaleg.maryland.gov/cmte_testimony/2023/jud/1nOwLCSy2dBQpGZ00yHb1GBSlOtSzZ-fe.pdf [https://perma.cc/F857-2QBB].

Rather than acknowledge the full scope of the Attorney General's letter, Defendants cherry-pick statements from the letter to incorrectly claim that it supports their notion that the

federal government is exempted from the coverage of the statute. *See* Defs.' Opening Mem. at 13–14 (quoting the Attorney General's letter that the bill "would authorize [OAG] to investigate, prosecute, and remediate civil rights violations by private actors," and "takes a measured approach to these investigations and specifically does not give [OAG] jurisdiction over governmental entities" (quoting Feb. 28, 2023, Bill Letter at 2)). But, read in its full context, it is evident the Attorney General's letter reveals a more limited legislative intent to exempt state and local government actors in order to avoid a potential conflict of interest. *See* Feb. 28, 2023, Bill Letter at 2. The Attorney General's Bill Letter explains that "[t]he intent of the bill is to preclude the OAG from exercising jurisdiction over governmental entities, *many of which the Office also represents in civil actions*." *Id.* (emphasis added). Indeed, the Attorney General "suggest[ed] that the bill clarify the entities against whom OAG may not bring suit" and "ask[ed] that [the bill] be amended to preclude actions against 'a political subdivision or any body of state or local government that is established by law.'" *Id.*

Based on the obvious notion that Maryland's Office of the Attorney General does not represent the federal government or its agencies, investigating and prosecuting civil rights violations by the federal government does not raise the same conflicts that would arise from bringing a civil action against those the Attorney General does or potentially could represent.[14] *See* State Gov't § 6-106 (establishing that the Attorney General "has general charge of the legal

---

[14] Even though OAG cannot bring a civil action against state and local government actors under the Civil Rights Statute, other state agencies oversee state and local actors regarding their detention conditions. Maryland's Adult Detention Center Standards apply to all state correctional facilities and constitute "minimum mandatory standards," including but not limited to incarcerated individual safety and incarcerated individual rights. *See* Md. Code Ann., Corr. Servs. §§ 8-103(a)(1) & (b)(2)(i). To ensure compliance with such standards, the Maryland Office of the Correctional Ombudsman, an independent state agency responsible for overseeing detention conditions in all state facilities, is authorized, among other things, to investigate complaints. *See id.* § 8-113; State Gov't §§ 9-4004–9-4005.

business of the State"); *id.* § 6-107 (describing Attorney General's work on behalf of political subdivisions). Thus, the statements Defendants should be read to show legislative intent to avoid a conflict of interest, not to exempt the federal government from the statute.

Because both the statutory text and the legislative history of the Civil Rights Statute demonstrate that the Maryland General Assembly intended to broadly authorize OAG to address civil rights violations, and did not intend to exempt the federal government, under a statutory interpretation that "effectuate[s] the intent of the Legislature," *Williams*, 440 Md. at 580, OAG's administrative subpoena is plainly valid.

And because OAG's administrative subpoena is valid under either Defendants' or the State's interpretation of the Maryland Civil Rights Statute, Defendants' refusal to comply with the valid subpoena has injured the State and is redressable by this Court. Therefore, Defendants' refusal to comply with this valid subpoena constitutes final agency action, and Defendants' argument under 12(b)(1) fails.

This Court should accordingly deny Defendants' motion to dismiss under 12(b)(1) for lack of subject-matter jurisdiction.

**C. Defendants' motion to dismiss pursuant to Rule 12(b)(6), or in the alternative for summary judgment, should likewise be denied because the State has stated a claim for relief under the APA.**

In moving to dismiss under 12(b)(6), Defendants contend that their denial of the State's administrative subpoena does not constitute final agency action under the APA. *See* Defs.' Opening Mem. at 11. Alternatively, Defendants cross-move for summary judgment under the same theory, *id.* at 10–16, but "[w]hen both parties file motions for summary judgment, as here, this Court applies the same standard of review to both motions, considering each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law," *see, e.g.*, *Nat'l Fed'n of the Blind, Inc. v. Wal-Mart Assocs., Inc.*, 566 F. Supp. 3d 383, 390 (D. Md.

2021) (internal quotation marks and citation omitted). Regardless, Defendants' denial of the State's administrative subpoena constitutes final agency action.

"[A]n agency action may be considered 'final' only when the action signals the consummation of an agency's decisionmaking process *and* gives rise to legal rights or consequences." *COMSAT Corp.*, 190 F.3d at 274. Defendants challenge only the second prong, whether their denial gives rise to legal rights or consequences, and thus Defendants should be viewed as conceding that the denial was the consummation of the agency's decisionmaking process. *See Maryland Elec. Indus. Health Fund v. MESCO, Inc.*, No. CIV.A. ELH-12-505, 2014 WL 853237, at *7 (D. Md. Feb. 28, 2014) ("Because defendants do not challenge that contention, they have conceded that point.").

Defendants' contention that their denial did not give rise to any legal rights or consequences is just an effort to repurpose their motion to dismiss argument that the State lacked authority to issue the subpoena. *See* Defs. Opening Mem. at 11 ("[B]ecause Maryland's subpoena is legally invalid, Maryland is unable to demonstrate that its denial by DHS gave rise to any legal rights or consequences under the APA."). But OAG's subpoena is valid for the reasons provided above. Therefore, Defendants' refusal to comply with this valid subpoena "gives rise to legal rights and consequences," and Defendants' alternative argument under 12(b)(6) fails for the same reason their 12(b)(1) argument failed.

This Court should accordingly deny Defendants' motion to dismiss under 12(b)(6) for failure to state a claim or, in the alternative, for summary judgment.

## II.    This Court should grant the State's motion for summary judgment.

Defendants' arguments in opposition to the State's motion for summary judgment motion are as equally unavailing as their arguments in support of their motion to dismiss. The APA, 5 U.S.C. §§ 551–559, 701–706, "permits a federal court to order a non-party agency to comply with

a subpoena if the government has refused production in an arbitrary, capricious, or otherwise unlawful manner." *COMSAT Corp.*, 190 F.3d at 277. In evaluating agency decision-making under the APA, the Court must examine the record and decide whether the "agency's decision to not comply with a subpoena" was "reasonable" and reached "in accordance with [its] *Touhy* regulations." *Andreas-Myers v. Nat'l Aeronautics & Space Admin.*, No. GJH-16-3410, 2017 WL 1632410, at *7 (D. Md. Apr. 28, 2017.). If the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," then "summary judgment should be granted." *Friends of Cap. Crescent Trail v. U.S. Army Corps of Eng'rs*, 453 F. Supp. 3d 804, 812 (D. Md. 2020) (quoting Fed. R. Civ. P. 56(a)), *aff'd mem.*, 855 F. App'x 121 (4th Cir. 2021). Because Defendants' denial of OAG's *Touhy* request and administrative subpoena was both contrary to law and arbitrary and capricious, this Court should grant the State's motion for summary judgment.[15] *See* Pl.'s Opening Mem. at 14–22.

### A. Defendants' failure to consider the majority of the regulatory factors shows that their denial of OAG's *Touhy* request was contrary to law.

Defendants' failure to "properly consider and apply its own *Touhy* regulations," *Rhoads v. U.S. Dep't of Veterans Affs.*, 242 F. Supp. 3d 985, 995 (E.D. Cal. 2017), means their denial of OAG's *Touhy* request was "not in accordance with law" or "without observance of procedure required by law," 5 U.S.C. § 706(2)(A)(D). *See* Pl.'s Opening Mem. at 16–17.

In their response to OAG's administrative subpoena, Defendants did not identify the enumerated factors under 6 C.F.R. § 5.48(a), nor did their reasoning indicate that the factors had

---

[15] As discussed above, Defendants do not dispute that their denial of OAG's *Touhy* request "signal[ed] the consummation of [the] agency's decisionmaking process," and the State already has rebutted Defendants' assertion that the denial did not "give[ ] rise to legal rights of consequences." *COMSAT Corp.*, 190 F.3d at 274. Because Defendants do not meaningfully contest that their denial was final agency action, the State need not rely on a theory that Defendants' response to the *Touhy* request was unreasonably delayed. *Cf.* Pl.'s Opening Mem. at 22–26.

been considered. *See* ICE *Touhy* Denial, ECF 14-5, A.R. at 21–26; *see also* Pl.'s Opening Mem. at 16–17. Defendants now suggest that they implicitly relied on factors permissible to consider under DHS's *Touhy* regulations. For example, Defendants note that "DHS's *Touhy* regulations specifically provide for consideration of factors such as avoidance of the expense of unnecessary resources on outside litigation," Defs.' Opening Mem. at 20 (citing 6 C.F.R. § 5.48(a)(1), (4)–(7)), and emphasize that they objected OAG's requests were "burdensome and duplicative" because responsive documents apparently already had been produced in discovery in the *D.N.N.* litigation. *Id.* But ICE's *Touhy* letter did not specifically address the factors Defendants now cite, or any others permitted by the regulation. Defendants cannot belatedly invoke the factors to retroactively dress up their denials of OAG's requests. *See Appalachian Voices v. U.S. Dep't of Interior*, 25 F.4th 259, 269 (4th Cir. 2022) (A "'reviewing court may look only to [the agency's] *contemporaneous* justifications' for its actions," not "counsel's *post hoc* rationalizations.") (first quoting *Dow AgroScis. v. Nat'l Marine Fisheries Serv.*, 707 F.3d 462, 467 (4th Cir. 2013), then *Motor Vehicle Mrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983)).

Indeed, Defendants' purported consideration of the factors cannot "reasonably be discerned" from their actual denial letter. *See Spence v. NCI Info. Sys.*, 530 F. Supp. 2d 739, 745 (D. Md. 2008) (quoting *Bowman Transp. v. Ark.–Best Freight Sys.*, 419 U.S. 281, 286 (1974)). Some of the factors Defendants now cite are plainly inapplicable. Although Defendants' brief refers to 6 C.F.R. § 5.48(a)(5)—which requires ICE to consider "[t]he need to avoid spending the time and money of the United States for private purposes"—and 6 C.F.R. § 5.48(a)(6)—which requires ICE to consider "[t]he need to maintain impartiality between private litigants in cases where a substantial government interest is not implicated"—this dispute involves neither "private

litigants" nor "private purposes."  It is absurd to claim that Defendants relied on those factors to refuse to cooperate with the State's investigation into Defendants' own conduct.

Moreover, Defendants do not explain (in their denial or in their brief) how OAG's requests implicated a "need to conserve" Defendants' employees' time.  *Id.* § 5.48(a)(4).  Nor do they explain how producing documents to the State "would have an adverse effect" on DHS's performance of its mission and duties.  *See id.* § 5.48(a)(7).  Defendants' belated cites to those factors in their opposition brief do not show that Defendants considered them when making the decision, as they were required to do.  *See Appalachian Voices*, 25 F.4th at 269.

Finally, Defendants do not appear to dispute that they failed to consider "[t]he public interest," 6 C.F.R. § 5.48(a)(3), in denying OAG's *Touhy* request.  As the State explained in its opening brief, *see* Pl.'s Opening Mem. at 18, OAG is investigating alleged "constitutional violation[s] of great magnitude" that pertain directly to ICE's mission.  *See Lamb v. Wallace*, No. 7:16-CV-44-FL, 2018 WL 847242, at *6 (E.D.N.C. Feb. 13, 2018);  ICE, *Detention Management* (Feb. 12, 2026), https://www.ice.gov/detain/detention-management [https://perma.cc/B7RS-5FFH] (describing mandatory detention standards for facilities housing ICE detainees); *see also D.N.N. v. Liggins*, No. 1:25-CV-01613-JRR, 2026 WL 632371, at *33 (D. Md. Mar. 6, 2026) (concluding that detainees in the hold rooms were "likely to succeed in showing that Defendants deprive individuals detained in the Baltimore Hold Rooms of hygienic, sanitary, and safe conditions, as well as basic medical screening and care, in violation of their rights guaranteed by the Fifth Amendment to the United States Constitution").  In the absence of any reference to the public interest, "it is not clear that [Defendants] considered [their] [objections] in the context of this [civil rights] matter, where the United States and its agencies, including [Defendants], may have an interest in the ultimate outcome."  *See Cognizant Tech. Sols. Corp. v. U.S. IRS*, No. CV

23-3320 (PGS) (RLS), 2024 WL 2091284, at *10.  Even now, by referring to a regulation that applies "in cases where a substantial government interest is not implicated[,]" *see* 6 C.F.R. § 5.48(a)(6); Defs.' Opening Mem. at 20, Defendants underscore that they did not consider their own involvement in the subject matter of OAG's investigation.  Defendants thus "completely ignored the factor on which [the State's] *Touhy* request[ ] . . . center[ed]" and "fail[ed] to address one of [its] most important aspects[.]"  *OhioHealth Corp. v. U.S. Dep't of Veteran Affairs*, No. 2:14-CV-292, 2014 WL 4660092, at *6 (S.D. Ohio Sept. 17, 2014).

In short, Defendants' citations to the regulatory factors in their opposition brief are simply a retroactive (and still underexplained) attempt to rehabilitate their mostly boilerplate denial.  To be sure, an agency is "'not required to utter some formulaic incantation' of its consideration of the applicable *Touhy* regulations."  *See* Defs.' Opening Mem. 22–23 (citation omitted).  But Defendants are obligated under the regulations to *consider* their eight enumerated regulatory factors, *see* Pl.'s Opening Mem. at 16, and neither the record, nor Defendants' briefing, suggests that they did so here.  Because "it was not sufficient" for Defendants "to pay only lip service to the majority of the factors, including blanket assertions that the request for [documents] would be 'unduly burdensome,'" *Rhoads*, 242 F. Supp. 3d at 996, Defendants did not "ma[ke] [their] denial in accordance with the applicable *Touhy* regulations," *cf. Smith v. FBI*, No. CV 25-12-BAH, 2026 WL 91607, at *12 (D. Md. Jan. 13, 2026).

For those reasons and others provided in the State's opening brief, *see* Pl.'s Opening Mem. at 16–17, Defendants' denial of OAG's *Touhy* request was contrary to law.  This Court should declare that Defendants' denial of OAG's *Touhy* request was contrary to law under the APA; vacate and set aside the decision; and order DHS and ICE to produce the documents requested.

**B. Defendants' conclusory defense of their decision-making confirms that Defendants' denial of OAG's *Touhy* request was arbitrary and capricious.**

25

Defendants' denial of OAG's *Touhy* request was also arbitrary and capricious under the APA because—as explained in the State's opening brief—Defendants "failed to consider important aspects of the dispute," "misapplied [their] *Touhy* regulations," and acted "counter to the evidence presented." *See* Pl.'s Opening Mem. at 18 (quoting *In re Subpoena to NSF OIG*, No. 3:18-MC-00006-JAG, 2018 WL 5017612, at *4 (E.D. Va. Oct. 16, 2018)). Unable to meaningfully defend the substance of their decision-making, Defendants reiterate their blanket objections that OAG's requests are unduly burdensome, duplicative, and implicate privacy concerns to argue that their denial was "reasonably articulated and in accordance with DHS's *Touhy* regulations." Defs.' Opening Mem. at 22. None of these arguments pass muster.

First, Defendants premise their undue burden argument on the incorrect assertions that "much of the discovery sought through [OAG's] subpoena to DHS has already been produced by Defendants" in the *D.N.N.* litigation, and that the documents OAG has requested are "reasonably available" from this litigation. *See* Defs.' Opening Mem. at 20–21. As an initial matter, Defendants' argument that the documents already have been produced contradicts their argument that production would be unduly burdensome. Presumably, Defendants already have collected responsive documents and reviewed them for privilege, which means that it would hardly be burdensome to produce the same documents to OAG.[16] *See Tri-City R.R. Co. v. Preferred Freezer Servs. of Richland*, No. 2:19-CV-00045-SAB, 2020 WL 533143, at *2 (E.D. Wash. Feb. 3, 2020) (recognizing that it is "not unduly burdensome" to produce documents that "already [were] produced . . . in response to another lawsuit"). Defendants "already ha[ve] demonstrated that

---

[16] Defendants did not make any "reasonable efforts . . . to reach [an] accommodation with the [State]" before issuing their blanket denial of OAG's *Touhy* request, thus undermining their argument of undue burden. *Cf. In re Subpoena Duces Tecum*, 228 F.3d 341, 351 (4th Cir. 2000) (describing such efforts "as a condition to maintaining the argument that an investigative subpoena is overly broad and oppressive"); *Morton Salt,* 338 U.S. at 653–54.

[they] have the ability to gather and produce this type of [information] because [they] did so in" the *D.N.N.* litigation. *Schroeder v. U.S. Dep't of Veterans Affairs*, 673 F. Supp. 3d 1204, 1216 (D. Kan. 2023).

But in any event, as the State has explained repeatedly, "many of [OAG's] requests are clearly outside the scope of the plaintiffs' discovery requests in *D.N.N.*" *See* OAG Resp. Ltr., A.R. at 31 (comparing the *D.N.N.* discovery requests with OAG's subpoena requests); Pl.'s Opening Mem. at 20. And even discovery that overlaps with OAG's subpoena requests is not "reasonably available" to OAG. *Contra* Defs.' Opening Mem. at 21. The State pointed out in its opening brief that (1) as an *amicus curiae*, is not a party to *D.N.N.* and therefore cannot "conduct discovery;" (2) the State cannot readily obtain these documents from plaintiffs' counsel due to a stipulated confidentiality agreement and protective order; and (3) the State has an independent investigative need to authenticate these documents. *See* Pl.'s Opening Mem. at 19–20. Defendants do not respond to any of those arguments. Nor do they address the State's point that Defendants failed to cite any authority that holds that the scope of the State's independent investigation should be limited to documents produced in private litigation. *See id.* at 20.[17]

Defendants' principal purported concern is the "potential cumulative burden" of compliance, in that "other private litigants may seek information if the agency complies." *See* Defs.' Opening Mem. at 21 (quoting *COMSAT Corp.*, 190 F.3d at 278). But "[c]oncerns about

---

[17] Rather, OAG has a unique need as a government agency to obtain a range of documents as part of its investigation. *Cf. In re Subpoena Duces Tecum*, 228 F.3d at 350 (explaining that questions of the permissible scope of a subpoena "cannot always be determined in the abstract" because even if the requested "documents might be numerous, they would reasonably be related to and further the [State] government's legitimate inquiry "); *EEOC v. Randstad*, 685 F.3d 433, 450 (4th Cir. 2012) (observing that during an investigation into whether "a particular employer discriminated in a particular way" the agency "is entitled to access virtually any material that might cast light on the allegations") (internal quotation marks and citation omitted).

cumulative effect . . . cannot put a blanket ban on all *Touhy* requests." *See Pitts v. United States*, No. 1:26-CV-00809-JPB, 2026 WL 1239296, at *6 (N.D. Ga. Apr. 30, 2026) (brackets omitted) (quoting *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1198 (11th Cir. 1991)). Here, Defendants have identified only one other potentially relevant matter—the *D.N.N.* litigation—so they cannot demonstrate that complying with OAG's subpoena (which, at most, partially overlaps with the *D.N.N.* discovery requests) creates a serious risk of "cumulative burden." *See* Defs.' Opening Mem. at 20–21; *see* ICE *Touhy* Denial, ECF 14-5, at 1–6; A.R. at 21–26. The existence of two related lawsuits falls far short of the risk of cumulative burden that other courts have deemed credible. *See, e.g.*, *City of Huntington v. AmerisourceBergen Drug Corp.*, No. CV 3:17-01362, 2020 WL 4511490, at *1, *5 (S.D. W. Va. Aug. 5, 2020) (considering "parties' subpoenas . . . against the backdrop of the ongoing [multi district litigation]," as well as "thousands of other lawsuits . . . relating to the opioid crisis . . . pending across the country").

Further, unlike in many of the "cumulative burden" cases Defendants cite, Defendants have hardly been "reasonably forthcoming in releasing [relevant] information" to the State. *Cf., e.g.*, *Puerto Rico v. United States*, 490 F.3d 50, 66 (1st Cir. 2007) (holding that the FBI's decision to withhold certain *Touhy* materials was neither arbitrary nor capricious because, among other things, the United States had already permitted the requester "to inspect bulletproof vests, helmets, weapons, and vehicles"). Defendants have failed to produce a single document to OAG in the nearly four months since the State made its request. In many of the "cumulative burden" cases, by contrast, the government already had provided documents or testimony to the requesting party, and courts merely assessed the reasonableness of a refusal to provide more. *See, e.g.*, *Cabral v. U.S. Dep't of Just.*, 587 F.3d 13, 23 (1st Cir. 2009) (observing that agency reasonably concluded that "authorizing more government officials to testify would have been cumulative and unduly

burdensome" given "[t]he disclosures and testimony the DOJ provided [previously] to the" requesting party); *Sauer Inc. v. Lexington Ins. Agency, Inc.*, No. 5:13-CV-180-F, 2014 WL 5580954, at \*6 (E.D.N.C. Oct. 31, 2014) (observing that agency had "already expended significant time and effort to comply with [the requestor]'s earlier document subpoena, and believed that information to be sufficient to comply with the [requestor]'s requests for information"). Those cases do not support Defendants' refusal to provide *any* responsive material in this case.

Second, Defendants do not respond to the State's argument that their denial of OAG's *Touhy* request was arbitrary and capricious because Defendants failed to consider alternatives to their blanket refusal to produce documents. *See* Pl.'s Opening Mem. at 21; *see Nebraska v. Su*, 121 F.4th 1, 17 (9th Cir. 2024) ("As the APA requires that agencies engage in reasoned decisionmaking, the agency had an obligation to consider . . . any alternatives, even if it could properly end up rejecting them.") (quoting *Nat'l Urb. League v. Ross*, 977 F.3d 770, 779 (9th Cir. 2020)). As the State explained in its opening brief, Defendants failed to consider whether to "produce [any] documents it concede[d] are relevant and non-privileged and which may be produced without an undue burden." *Id.* (quoting *Doan v. Bergeron*, No. 15-CV-11725-IT, 2016 WL 5346936, at \*3 (D. Mass. Sept. 23, 2016)). And Defendants failed to consider whether they could "adequately protect any private information with appropriate redactions." *Id.* (quoting *In re Subpoena to NSF OIG*, 2018 WL 5017612, at \*3). Defendants have not addressed those potential alternatives even now. Their "failure to consider [ ] alternatives, and to explain why such alternatives were not chosen, was arbitrary and capricious." *Id.* (quoting *Int'l Ladies' Garment Workers' Union v. Donovan*, 722 F.2d 795, 815 (D.C. Cir. 1985)).

Finally, Defendants ignore the State's arguments that Defendants' denial was arbitrary and capricious because Defendants "entirely failed to consider an important aspect of the problem,"

*State Farm*, 463 U.S. at 43, specifically, the significant public interest in disclosure. *See* Pls.' Opening Mem. at 18–19; *see also supra* 24–25. OAG explained in its *Touhy* request that it sought information "relevant to evaluating the nature and scope of harm to Maryland residents and the State of Maryland." *See* OAG *Touhy* Request, A.R. at 5–6; *see also* Pl.'s Opening Mem. at 18–19. OAG opened its investigation to substantiate alarming reports of inhumane conditions in the Baltimore hold rooms—conditions that this Court subsequently held were likely to be unconstitutional, *see D.N.N.*, 2026 WL 632371, at *33—but Defendants entirely "failed to consider . . . the seriousness of the [underlying] action" in responding to the *Touhy* request. *See Lamb*, 2018 WL 847242, at *6.

For those reasons and others provided in the State's opening brief, *see* Pl.'s Opening Mem. at 18–22—many of which remain unaddressed by Defendants—Defendants' denial of OAG's *Touhy* request was arbitrary and capricious. This Court should declare that Defendants' denial of OAG's *Touhy* request was arbitrary and capricious under the APA; vacate and set aside ICE's decision; and order DHS and ICE to produce the documents requested.

### CONCLUSION

For the foregoing reasons, this Court should deny Defendants' motion to dismiss, or in the alternative, cross-motion for summary judgment; grant the State's motion for summary judgment; and issue the accompanying proposed order.

Dated: May 26, 2026

**ANTHONY G. BROWN**
ATTORNEY GENERAL OF MARYLAND

/s/ Yasmin Dagne

Yasmin Dagne (D. Md. Bar No. 32016)
Keith M. Jamieson (D. Md. Bar No. 31543)
Adam Kirschner (D. Md. Bar No. 31767)

Office of the Attorney General

200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
ydagne@oag.maryland.gov
410-576-1580

*Attorneys for the State of Maryland*

## CERTIFICATE OF SERVICE

I certify that on May 26, 2026, I electronically filed the foregoing document and its attachments via CM/ECF and thereby served all parties who have appeared through counsel on the Court's electronic docket.

Respectfully submitted,

By: */s/ Yasmin Dagne*
Yasmin Dagne (D. Md. Bar No. 32016)
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
ydagne@oag.maryland.gov
410-576-1580

*Counsel for the State of Maryland*