## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| STATE OF MARYLAND, | |
| Plaintiff, | |
| v. | Civil Action No. 1:26-cv-01024-JRR |
| DAVID VENTURELLA,[1] *ET AL*., | |
| Defendants. | |

## DEFENDANTS' REPLY IN RESPONSE TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR MOTION FOR SUMMARY JUDGMENT

Defendants, David Venturella Acting Director, United States Immigration and Customs Enforcement ("ICE"), Markwayne Mullin,[2] Secretary, United States Department of Homeland Security ("DHS"), by its counsel, Kelly O. Hayes, United States Attorney for the District of Maryland, and S. Nicole Nardone, Assistant United States Attorney for that district, hereby submit its Reply in response to Plaintiff's Opposition to Defendants' Motion to Dismiss or for Summary Judgment.

---

[1] David Venturella recently replaced Todd M. Lyons as Acting Director, United States Immigration and Customs Enforcement ("ICE").  Pursuant to Federal Rule of Civil Procedure 25(d), Madam Clerk shall substitute David Venturella for Todd M. Lyons as a Defendant in this action.

[2] Markwayne Mullin was recently confirmed as Secretary of the United States Department of Homeland Security. Pursuant to Federal Rule of Civil Procedure 25(d), Madam Clerk shall substitute Markwayne Mullin for Kristi Noem as a Defendant in this action.

2

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 16, 2026, I electronically filed the foregoing Defendants' Reply in Response to Plaintiff's Opposition to Defendants' Motion To Dismiss or in the Alternative Motion for Summary Judgment with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all counsel.

*/s/ S. Nicole Nardone*
S. Nicole Nardone

## **TABLE OF CONTENTS**

I.     INTRODUCTION………………………………………………………..………….1

II.    ARGUMENT………………………………………………………………………...1

The Complaint Fails To State A Claim Under The APA As DHS's Denial of
Maryland's Invalid Subpoena Did Not Give Rise To Legal Rights Or Consequences…...2

A.    The Issuance Of The Subpoena To ICE Under Md. Code Ann., State Gov't
§ 20-1041  Was *Ultra Vires*, As The Statute Does Not Authorize A Subpoena To
The Federal Government…………………………………………….……………….2

    1.    Relevant Principles Of Statutory Construction……………………………3

    2.    There Is No Merit To Maryland's Argument That Language Or
Legislative Intent of Maryland Ann. Code State Gov't  § 20-1041 (Civil
Rights Enforcement Act 2023) Indicates That it Applies "Broadly To
Remedy Civil Rights, Including By The Federal Government"…………..4

        i.    The Plain Language Of Maryland Ann. Code State Gov't  § 20-
1041 (Civil Rights Enforcement Act 2023) Authorizes Civil Rights
Actions Against Any "Person Engaged In Discrimination" And
Specifically Excludes Actions Against the State, Its Local
Governments or Political Subdivisions……………………………6

        ii.    There Is No Indication That The Legislature Intended The Civil
Rights Enforcement Act of 2023 To Authorize The State To
Subpoena The Federal Government, Particularly Where Other
Statutes Specifically Provide For Civil Actions By The State
Against The Federal Government And Do Not Provide Subpoena
Power…………………………………………………………..8

B.    Maryland's Assertion For The First Time In Its Opposition That The Subpoena
Targeted Private Contractors Is Not Raised In The Complaint Nor Supported By
the Subpoena And Is Therefore Not Properly Before The Court………………..11

C.    Even If The State Had Directed Its Subpoena To Private Contractors Working In
The Fallon Facility (Which It Did Not), This Would Not Provide A Back Door
For The State To Subpoena The United States In Contravention Of The State's
Statute And In Violation Of The Supremacy Clause ……………………………12

III.   CONCLUSION……………………………………………………..………………15

## I.    INTRODUCTION

As discussed in its Defendants' Motion to Dismiss ("Motion") (ECF 16), the Complaint should be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(2) as the Court lacks jurisdiction over the Complaint and Maryland fails to state a claim under the Administrative Procedure Act ("APA") upon which relief may be granted. The administrative subpoena Maryland served on DHS and ICE is *ultra vires* as the statute under which it was issued -- Md. Code Ann., State Gov't § 20-1044(b) -- does not authorize a subpoena to the federal government.

In its Opposition ("Opp."), Plaintiff mounts a few tenuous arguments in support of its subpoena to ICE and DHS under Maryland Ann. Code State Gov't § 20-1041, including the assertion -- contrary to basic cannons of statutory construction – that this Court should presume the legislature intended the federal government to be bound by a statute *if it is not specifically excluded* from the statute. Plaintiff then pivots to argue that, even if the subpoena to the federal government was *ultra vires*, it is otherwise legal because it targets private contractors working in the Fallon Facility. This argument fails for several reasons.  To start, neither Plaintiff's subpoena nor its Complaint indicate that private contractors were in any way the target of Maryland's investigation.  Moreover, even if the State had directed its subpoena to private contractors working in the Fallon Facility (which it did not), such an action could not provide a back door for the State to subpoena the federal government pursuant to a statute that plainly does not apply to the United States.  Further, any such interpretation to the contrary would surely result in a violation of the Supremacy Clause as the obvious effect of such a subpoena would be interference with the operations of federal agency on federal property.

## II.   ARGUMENT

**The Complaint Fails To State A Claim Under The APA As DHS's Denial of Maryland's Invalid Subpoena Did Not Give Rise To Legal Rights Or Consequences**

As argued in Defendants' Motion (ECF 16) because Maryland's administrative subpoena was legally invalid, Maryland cannot demonstrate that its denial by DHS/ICE gave rise to any "legal rights or consequences" upon which the State may establish standing or based upon which this Court could assume jurisdiction or provide a legal remedy. Therefore, Maryland's Complaint should be dismissed in its entirety or summary judgment should be entered in favor of Defendants.

Maryland does not object to the foregoing principle in its Opposition, but challenges Defendants' assertion that the subpoena was *ultra vires*. For the reasons set forth in Defendants' Motion (ECF 16) and *infra*, Maryland's arguments fail and Maryland's Complaint should be dismissed.

**A.   The Issuance Of The Subpoena To ICE Under Md. Code Ann., State Gov't § 20-1041  Was *Ultra Vires*, As The Statute Does Not Authorize A Subpoena To The Federal Government**

"To determine the validity of an investigatory subpoena issued by an administrative agency, the following threefold test is applied: "[w]hether the inquiry is authorized by statute, the information sought is relevant to the inquiry, and the demand is not too indefinite or overbroad." *Washington Home Remodelers, Inc. v. State, Off. of Att'y Gen., Consumer Prot. Div.*, 426 Md. 613, 623, 45 A.3d 208 (2012) (citation and quotations omitted).  As Plaintiff notes, Defendants' Motion addresses only the first element of this test.  *Opp.* at 6. However, the question of whether the subpoena was "authorized by statute" is critical. If the administrative subpoena was not authorized by the statute, it is *ultra vires* and Plaintiff's Complaint must fail.

2

### 1.    Relevant Principles Of Statutory Construction

This Court recently reviewed how federal courts interpret state statutes in *Addison v. Maryland Dep't of Pub. Safety & Corr. Servs.*, Case No. CV ELH-25-846, 2026 WL 795610, at \*23 (D. Md. Mar. 20, 2026). Judge Hollander observed that "[t]he Fourth Circuit has instructed that, when interpreting a State statute, the federal court must 'stand in the shoes of Maryland's courts' and 'look to the rules of construction applied by [Maryland's] highest court.'" *Id.* (*quoting United States v. Lierman*, 151 F.4th 530, 536 (4th Cir. 2025)). "Notably, Maryland 'follows the general principles of statutory interpretation.'" *Id.* (*quoting Johnson v. Mayor & City Council of Balt.*, 430 Md. 368, 377 (2013)).

"The goal of statutory construction is to discern and carry out the intent of the Legislature." *Addison, 2026 WL 795610, at \*23 (quoting Blue v. Prince George's County*, 434 Md. 681, 689, (2013)). "To ascertain the intent of the General Assembly," the Court "begin[s] with the normal, plain meaning of the language of the statute." *Id. (quoting Lockshin v. Semsker*, 412 Md. 257, 274 (2010); *Breslin v. Powell*, 421 Md. 266, 286 (2011)). "If the language of the statute is "clear and unambiguous, courts will give effect to the plain meaning of the statute and no further sleuthing of statutory interpretation is needed." *Id. at \*24 (quoting Breslin*, 421 Md. at 286–87). But, if a statutory term is not defined, it is "'proper to consult a dictionary or dictionaries for a term's ordinary and popular meaning.'" *Id. (quoting Montgomery County v. Deibler*, 423 Md. 54, 67 (2011) (citation omitted)).

"Courts 'do not read statutory language in a vacuum,' nor do they 'confine [their] interpretation of a statute's plain language to the isolated section alone.'" *Addison, 2026 WL 795610, at \*23 (quoting Williams v. Peninsula Reg'l Med. Ctr.,* 440 Md. 573, 580-81 (2014) (citation omitted)). "Rather, the plain language of a statute 'must be viewed within the context of

3

the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute.'" *Id. (quoting In re J.C.N.,* 460 Md. 371, 391 (2018) (citation omitted); *In re St. Andrews United Methodist Church*, 2023 WL 386177, at *4 (Md. Ct. Spec. App. Jan. 25, 2023)).

Further, "the statute must be read 'as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.'" *Addison*, 2026 WL 795610, at *24 (*quoting Conaway v. State*, 464 Md. 505, 523 (2019); *Andrews & Lawrence Pro. Servs., LLC v. Mills*, 467 Md. 126, 149 (2020); *Bourgeois v. Live Nation Ent's, Inc.*, 430 Md. 14, 27 (2013)).  Courts also may "neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute." *Id. (quoting McCloud v. Dep't of State Police, Handgun Permit Review Bd.*, 426 Md. 473, 480 (2012) (citation omitted)).

Finally, courts "should strive to 'avoid a construction of the statute that is unreasonable, illogical, or inconsistent with common sense.'" *Addison*, 2026 WL 795610, at *24 (*quoting Bellard v. State*, 452 Md. 467, 481-82 (2017); *Breck v. Maryland State Police*, 452 Md. 229, 248 (2017); *Polek v. J.P. Morgan Chase Bank, N.A.,* 424 Md. 333, 351 (2012)). When one interpretation of statutory language would produce such a result, a court will reject that interpretation in favor of one that does not suffer the same flaw. *Id. (citing Bell v. Chance*, 460 Md. 28, 53 (2018)).

**2.      There Is No Merit To Maryland's Argument That The Language Or Legislative Intent of Maryland Ann. Code State Gov't  § 20-1041 Indicates That it Applies "Broadly To Remedy Civil Rights, Including By The Federal Government"**

Maryland offers up an unconvincing defense of the subpoena it issued to DHS/ICE under Maryland Ann. Code State Gov't § 20-1041. Maryland first conclusively asserts that the "OAG has *broad* authority to investigate under . . .  State Gov't § 20-1041(a)" because the provision "authorizes OAG to investigate 'any conduct' that may constitute civil rights violation and does

4

not specify who can or cannot be investigated." *Opp.* at 7. (emphasis in original). On this basis, Maryland concludes that it "has a *plausible reason to believe* that various individuals may be involved in 'conduct that constitutes a civil rights violation' . . . in connection with the treatment of immigration detainees in the Baltimore ICE  hold room," and thus "OAG's investigation falls within the scope of conduct to be addressed under Maryland's Civil Rights Statute." *Id.* (emphasis added).

Whether Maryland had "plausible reason" to believe § 20-1041 provided it authority to subpoena the United States is irrelevant. Further, as discussed *infra*, Maryland's argument, which asks the Court to view § 20-1041(a) in isolation and divorced from other statutory provisions within the same statute, is plainly inconsistent with Maryland's principles of statutory interpretation that provide that "statutes are to be read as a whole" and courts may "neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language." *Addison*, 2026 WL 795610, at *24.  As discussed in Defendants' Motion, Maryland's inability to defend its subpoena pursuant to § 20-1041 – the statute under which it was issued – is a death knell to Maryland's subpoena and, consequently, to Maryland's Complaint under the APA.[3]

---

[3] There is no merit to Plaintiff's argument that Defendants waived any challenges to the subpoena by failing to raise them in their *Touhy* response.  *See* Opp. at 1. Challenges to the legal validity of a subpoena cannot be waived. *See e.g. COMSAT Corp. v. Nat'l Sci. Found.,* 190 F.3d 269, 276 (4th Cir. 1999) ("By failing to [move to quash the subpoena], the recipient does not waive the right to challenge the subpoena on the merits if faced with a petition to compel.")

i.     **The Plain Language Of Maryland Ann. Code State Gov't § 20-1041 Authorizes Civil Rights Actions Against Any "Person Engaged In Discrimination" And Specifically Excludes Actions Against A Government Entity, Its Local Governments or Political Subdivisions**

As discussed in Defendants' Motion, the plain language of Maryland Ann. Code State Gov't § 20-1041 (known as the "Civil Rights Enforcement Act of 2023"[4]) as well as its legislative history, make clear that the statute was intended to prosecute private actors and exclude government actors, including the federal government. *See* ECF 6 at 11-14.

In addition to the plain language of the statute that excludes civil rights actions against "political subdivisions" and "state or local government," there is nothing in the language of the statute that would suggests that it applies to actions of the federal government. Further, pursuant to cannons of statutory construction, a sovereign can only be bound by a statute if its inclusion is manifest and specific.  Here, § 20-1041 reveals no such intent. As noted in Defendants' Motion, Section 20-1042 provides that "the Attorney General may commence a civil action in accordance with this part" if "the Attorney General has reason to believe that a *person* is engaged in discrimination prohibited by the U.S. Constitution, the Maryland Constitution, or State or federal law." *Id.* at 12. "Person" for purposes of the statute is defined as "an individual, receiver, trustee, guardian, personal representative, fiduciary, representative of any kind, corporation, partnership, business trust, statutory trust, limited liability company, firm, association, or other nongovernmental entity." *Id.*

The federal government plainly does not qualify as a "person" under this definition.  It is a well-established rule of statutory construction that sovereign governments (state and federal) are excluded from the definition of "person" unless there is a specific intent that they be included. *See*

---

[4] *See* https://mgaleg.maryland.gov/mgawebsite/Legislation/Details/SB0540?ys=2023rs

*United States v. Coumantaros*, 165 F. Supp. 695, 697 (D. Md. 1958); *Washington Suburban Sanitary Comm'n v. Phillips*, 413 Md. 606, 622 (2010) ("We have long recognized that, in general, the term 'person' in a statute does not include the State and its agencies and instrumentalities."); *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 780 (2000); (it is a "longstanding interpretive presumption that 'person' does not include the sovereign."); *Al Fayed v. CIA*, 229 F.3d 272, 274 (D.C. Cir. 2000) ("the word 'person' in a statute does not include a sovereign government absent affirmative evidence of such an inclusory intent."); *Washington Suburban Sanitary Comm'n*, 413 Md. at 620 ("it is a basic and long-standing principle of sound statutory interpretation that the State is not deemed to be bound by an enactment of the General Assembly unless the enactment specifically names the State or manifests a clear and indisputable intention that the State is to be bound.")

Based on the foregoing, Maryland's argument that this Court should read § 20-1041 to "necessarily [include] the federal government" because it specifically exempts "state and local government actors from civil action under the statute . . . [but did] not include such an exemption for the federal government" is simply wrong. Such an interpretation would be plainly inconsistent with longstanding cannons of statutory construction that require "specific evidence" and a "clear and indisputable intention" by the legislature that the federal government is to be bound. *See Al Fayed*, 229 F.3d at 274; *Washington Suburban Sanitary Comm'n*, 413 Md. at 620. Plaintiff's argument that this Court should interpret the legislature as having intended to include the federal government because the statute specifically *does not address the federal government* advocates for the exact opposite of these principles. Further to read into the statute an intent to include the federal government where it contains zero references to the federal government is the antithesis of what Maryland itself urges the Court to do here. *See Opp.* at 17, *citing Mayor & City Council of*

*Baltimore v. Hackley*, 300 Md. 277, 283 (Md. 1984) ("the Court should 'not insert or omit words to make a statute express an intention' . . . 'not evidenced in its original form.'").

There is also nothing in the statutory scheme to which § 20-1041 belongs that suggests an intent that it apply to actions of the federal government. The statute defines "civil rights violations" to include discrimination within state-level commerce, housing and the private job market and does not indicate that it is aimed at interstate commerce or that it otherwise targets federal activity. *See e.g.* Maryland Ann. Code State Gov't § 20-1044 (providing that OAG may conduct investigations if they have "reasonable cause to believe that any person committed a civil rights violation"); Maryland Ann. Code State Gov't § 20-1040 (defining "civil rights violations" to include discriminatory acts as defined in § 20-101); Maryland Ann. Code State Gov't § 20-101 (defining "discriminatory acts" to include acts that occur within public accommodation, housing, commercial leasing and employment). Consistent with this, the Attorney General's letter related to the statute provided that it was intended to "supplement the valiant work done by the Maryland Commission on Civil Rights . . . [in the areas of] fair housing, public accommodations, employment discrimination, or commercial practices." *See* https://mgaleg.maryland.gov/cmte_testimony/2023/jud/1nOwLCSy2dBQpGZ00yHb1GBSlOtSzZ-fe.pdf (emphasis added).

   **ii.**  **There Is No Indication That The Legislature Intended The Civil Rights Enforcement Act of 2023 To Authorize The State To Subpoena The Federal Government, Particularly Where Other Statutes Specifically Provide For Civil Actions By The State Against The Federal Government And Do Not Provide Subpoena Power**

Contrary to Plaintiff's arguments there is no indication that the Civil Rights Enforcement Act of 2023 of was intended to "broadly authorize OAG to remedy civil rights violation, including by the federal government." *Opp.* at 5. As discussed in Defendants' Motion, the legislative history

of the statute also does not support such an interpretation. *See* ECF 16 at 13-14.  Rather, quite the opposite.

While Maryland accuses Defendant of "cherry-pick[ing]" statements from the Attorney General's letter regarding the [Civil Rights Enforcement Act]," this is what the State does in its Opposition. *See Opp.* at 18. Although, as Maryland points out, the AG letter notes that the bill would "give[] the OAG the broad authority to protect Marylanders from discriminatory practices" and that the "OAG has the power and resources to handle large investigations and particularly egregious cases," the letter also specifically provides that "[the] bill would authorize the . . . ("OAG") to investigate prosecute, and remediate civil rights violations by *private actors* . . .[and that the bill] takes a *measured approach and specifically does not give [OAG] jurisdiction over governmental entities*." *See* https://mgaleg.maryland.gov/ cmte_testimony/2023/jud/1nOw LCSy2dBQpGZ00yHb1GBSlOtSzZ-fe.pdf (emphasis added).

Although, admittedly, the AG letter explicitly addresses precluding the OAG from exercising jurisdiction over state governmental entities "many of which the Office also represents in civil actions," the letter makes plain that the bill was also not intended to authorize actions against other "governmental entities," including the federal government -- in its reference to bills that plainly do target the federal government.  *Id.* For example, the AG letter specifically juxtaposed the powers created by this bill with those created by the legislature in 2017 in "the Maryland Defense Act, which authorized the OAG to file suit on behalf of Marylanders when 'the federal government's action or inaction . . . threatens the public interest and welfare of the residents of the State with respect to a variety of civil rights and liberties." *Id.* Indeed, the Maryland Defense Act specifically authorizes the OAG "to investigate, commence, and prosecute or defend any civil or criminal suit or action that is based on the federal government's action or inaction that threatens

9

the public interest and welfare of the residents of the state with respect to" *inter alia*: civil liberties, illegal and unconstitutional federal immigration, and the general health and well-being of the state's residents. *See* https://mgaleg.maryland.gov/ 2017RS/bills/hb/hb0913T.pdf   Notably the Maryland Defense Act also cabins the authority of the OAG, requiring prior approval by the governor before commencing any suit under the statute, and does not authorize any subpoena power with regard to the federal government. *Id.*  Similarly, the No Kings Act, SB 346, enacted in 2026, grants the OAG power to bring lawsuits against federal agents or judicial officers who deprive someone of rights guaranteed by the Constitution. https://mgaleg.maryland.gov/ 2026RS/bills/hb/hb0550f.pdf  However, like the Maryland Defense Act, the No Kings Act also does not provide the OAG the power to subpoena the federal government.

The Maryland Defense Act and the recently enacted No Kings Act make plain that had the state legislature intended the Civil Rights Enforcement Act to apply against the federal government, it would have made such a mandate explicit. Importantly, pursuant to principles of statutory construction, absent such language, the Court should not interpret the statute to apply to the federal government, contrary to the States's arguments otherwise.  Further, the fact that neither the Maryland Defense Act nor the No Kings Act include subpoena power, further supports for Defendants' position that the issuance of a subpoena under § 20-1041 to the United States was *ultra vires*.[5]

---

[5] The fact that Maryland's *Touhy* letter and Complaint cite to the Maryland Defense Act (which explicitly targets the federal government) – while its subpoena only references § 20-1041 government – was plainly an effort to bolster the legal sufficiency of its subpoena under § 20-1041. Arguably, Maryland recognized this problem as § 20-1041 does not provide the State the ability to reach the federal government while the Maryland Defense Act does not provide subpoena authority – a power which must be specifically granted by the legislature. *See Miller v. Baltimore Cnty. Police Dep't,* 179 Md. App. 370, 378 (2008) ("It is well-settled that administrative agencies 'have power to subpoena information but only through the express statutory grant of such power by the General Assembly.'")

**B.      Maryland's Assertion For The First Time In Its Opposition That The Subpoena Targeted Private Contractors Is Not Raised In The Complaint Nor Supported By the Subpoena And Is Therefore Not Properly Before The Court**

Maryland argues for the first time in its Opposition that its subpoena is valid "as part of its *investigation of potentially unlawful conduct by a private actor*." Opp. at 5 (emphasis added). However, nowhere in its Complaint nor its subpoena does Maryland indicate that its investigation concerns conduct by a private contractors. Indeed, the words "private," or "contractor" are entirely absent from these documents. Only in its Opposition – upon realizing the limitation of the statute under which it issued its subpoena – does Maryland now proclaim that they are "investigating . . . unlawful conduct by a private actor." *Id*. However, Maryland cannot amend its Complaint through arguments in its motion. *See Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (4th Cir. 1998) (explaining that plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"). Therefore, this issue is not properly before the Court.

In its Complaint, Maryland alleged that "in January 2026 [it] opened an investigation into whether ICE's conduct violated federal civil rights laws." ECF No. 1, Complaint ("*Compl.*") at ¶ 2. The Complaint repeatedly asserts that the targets of the investigation and the subpoena are the conduct of DHS and ICE. *See e.g.* ¶ 46 ("[o]n January 30, 2026, [Maryland] sent an administrative subpoena to the *targets of its investigation – DHS and ICE.*"); ¶ 29 (the Hold Room investigation is conducted by OAG pursuant to Maryland laws that authorize the [AG] to conduct investigations [into] . . . *actions or inactions by the federal government*"); ("the [AG] may investigate . . . *action that is based on the federal government's action or inaction*"); ¶ 30 ("OAG is investigating whether *DHS and ICE are engaging in . . . civil rights violations*") (emphasis added). Consistent with this, the "Parties" section of the Complaint only identifies ICE and DHS

11

and the federal officials heading those organizations. *Id.* at ¶¶ 9, 10, 11, 12.  Indeed, the terms "private" or "contractors" and the fact that private contractors work in the Fallon Facility is completely absent from the Complaint.  *See gen. Compl.*  Likewise, although the subpoena seeks "[a]ll complaints or grievances . . . received by any agent or contractor of the United States" and seeks "contracts for services for Detainees" related to "medical services", "food", "bedding or furniture", "sanitation supplies", and "heating, cooling, or ventilation", it does not otherwise mention private contractors nor does it seek contracts related to private employees at the facility or any other information related to such employees or their employment.  See ECF 1-13 at 17.

Consequently, Maryland's assertion for the first time in its Opposition that its investigation and subpoena concerned "potentially unlawful conduct by a private actor" is clearly an effort to justify its subpoena, *ex post facto*, and is not properly before the Court as it was not raised in the Complaint.

**C.**    **Even If The State Had Directed Its Subpoena To Private Contractors Working In The Fallon Facility (Which It Did Not), This Would Not Provide A Back Door For The State To Subpoena The United States In Contravention Of The State's Statute And In Violation Of The Supremacy Clause**

Even Maryland had directed its subpoena to private contractors working in the Fallon Facility (which it did not), such an effort would not provide the State a backdoor means to subpoena the federal government pursuant to Maryland Ann. Code State Gov't § 20-1041 -- a law that plainly does not authorize such a subpoena as discussed *infra*.  For this same reason, any such effort should fail as a violation of the Supremacy Clause.  Even if the State were to argue that the subpoena targeted only private contractors at the Fallon Facility, the plain effect of the subpoena would be to interfere with a federal operation on federal property.

The Third Circuit recently observed that the Supreme Court "has long held that, just as states cannot regulate the federal government itself, they cannot regulate private parties in a way

12

that severely undercuts a federal function." *CoreCivic, Inc. v. Governor of New Jersey*, 145 F.4th 315, 322 (3d Cir. 2025). Although Maryland argues (for the first time in its Opposition) that its subpoena is valid to the extent it targets only private conduct, the Court should reject this argument. The Court should see Maryland's new spin on its subpoena "for what it really is" -- an attempt to "dictate the manner in which the federal [immigration] function is carried out." *CoreCivic, Inc. v. Governor of N.J.,* 145 F.4th 315, 329 (3d Cir. 2025).  Courts have recognized that laws can regulate the federal government even though, as suggested here, they purport to operate against others. *See, e.g., Geo Grp., Inc. v. Newsom*, 50 F.4th 745 (9th Cir. 2022) (holding that California statute which phased out all private detention facilities within the State, as applied to ICE detention facilities operated by contractors, violated intergovernmental immunity); *United States v. King Cnty., Washington*, 122 F.4th 740, 757 (9th Cir. 2024) (finding unlawful regulation where a county order directed local officials to ensure that operators who leased space from the county's airport would not service ICE charter flights, thereby overriding the federal government's choice to use contractors to run its flights).

Illustratively, in *CoreCivic*, the Third Circuit rejected the argument Maryland proffers here. In that case, a New Jersey state law prohibited a private contractor from renewing its contract to provide detention for ICE detainees. New Jersey argued, similar to the State here, that its law applied  "only to the state, its municipalities, and private contractors . . ." but "not to the federal government." *Id.* at 322. Thus, that state law, according to New Jersey, did not directly bar "the federal government from doing anything." The Third Circuit rejected this argument. Although "[t]rue," the state law's text did "not apply to the federal government," *id.* at 325, "[i]t is a direct regulation in everything but name." *Id.* at 326. As the court reasoned, "[f]ederal law gives federal officials discretion to contract for immigration detention," *id.* at 327, and "New Jersey's law

destroys that discretion." *Id.* "Intergovernmental immunity is not a formalist doctrine." *Id.* at 322. Instead, courts "must probe the 'purpose or self-evident operation of a statute' to see if it is used to evade the limits on immunity 'by directly achieving the same result.'" *Id.*

Here, to the extent Maryland argues that its subpoena is valid as it applies only to private contractors, this is plainly untrue for many reasons and is merely an attempt by Maryland to evade the limits of its own statute and the principle of sovereign immunity. First, as discussed *supra*, the subpoena and Complaint state that the targets of the subpoena are ICE and DHS and they do not mention private contractors at the Fallon Facility.  Further, even if the State had directed its subpoena to private contractors at the facility, the Court should see any such effort as a poorly veiled attempt to subpoena the federal government. The plain effect of such a subpoena would be to interfere with a federal operation on federal property. As the Supreme Court recently reiterated "we have long recognized that federal law preempts state laws that intrude on the powers that the Constitution confers exclusively on the Federal Government, as well as laws that substantially interfere with the operation of the Federal Government's organs or the work of federal officers." *Hencely v. Fluor Corp.*, 146 S. Ct. 1086, 1101 (2026).

14

## III.    CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court dismiss the

Complaint or enter summary judgment in its favor.


Respectfully submitted,

KELLY O. HAYES
United States Attorney


*/s/ S. Nicole Nardone*
S. Nicole Nardone
Assistant United States Attorney
U.S. Attorney's Office
District of Maryland
36 S. Charles Street, 4th Floor
Baltimore, Maryland 21201
(410) 209-4882
Nicole.Nardone@usdoj.gov

15